[No. B072438. Second Dist., Div. Four. Dec. 10, 1993.]

WAYNE MOGILEFSKY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
SILVER PICTURES et al., Real Parties in Interest.

1410

## COUNSEL

Schonbrun & De Simone, V. James De Simone, Michael D. Seplow and Marcia A. Gladson for Petitioner.

No appearance for Respondent.

Greenberg, Glusker, Fields, Claman & Machtinger, Bertram Fields, Bonnie E. Eskenazi, Patricia A. Millett, Eve H. Wagner, Katten, Muchin, Zavis & Weitzman, Howard L. Weitzman and Zia F. Modabber for Real Parties in Interest.

## OPINION

**WOODS (A. M.), P. J.**—The issue presented in this writ proceeding is whether same gender sexual harassment may be the basis of a cause of action for sexual harassment in violation of the Fair Employment and Housing Act. (Gov. Code, § 12940, subd. (h).) After review, we answer this question in the affirmative and issue a writ of mandate directing respondent superior court to vacate its orders sustaining, without leave to amend, demurrers to a cause of action alleging such behavior.

## FACTS

Petitioner Wayne Mogilefsky alleged in his first amended complaint that he was subjected to sexual harassment and discrimination by Michael Levy, his supervisor, during the course of his employment as creative editor for real parties in interest Silver Pictures, Warner Brothers, and Joel Silver.[1]

Specifically, petitioner alleged that on two occasions Levy, the president of Silver Pictures, demanded petitioner stay overnight in Levy's hotel suite. On the first occasion, Levy allegedly informed petitioner that he would receive more money if he cooperated, ordered petitioner to play a pornographic film on the VCR, made lewd and lascivious comments about the film, and asked petitioner how much he would charge to perform acts similar to those depicted in the film. The next morning Levy allegedly falsely implied to others that petitioner engaged in anal sex with him. On the second occasion, Levy allegedly referred to petitioner in a profane and degrading manner and inquired repeatedly into petitioner's private life, including questions regarding his prior relationships. Very early the next morning, Levy allegedly woke petitioner, requested him to take his clothes off, and told petitioner that he wanted to sleep next to him.

Petitioner alleged that he went to Levy's hotel suite the second time only after being informed by others that he had no choice in the matter, that attendance at the suite was mandatory, that another male employee had been fired for not going to Levy's suite when ordered to do so, and that petitioner should consider the consequences before refusing.

These acts were alleged to be violations of the duties imposed upon real parties in interest by California Government Code section 12940, including the prohibitions against discrimination on the basis of gender, asking for sexual favors in return for favorable treatment in the workplace or making any sexual requests with an explicit or implicit quid pro quo consequence in the workplace.

Real parties in interest Silver Pictures, Warner Brothers, and Joel Silver generally demurred to the first cause of action citing *Hart* v. *National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420 [235 Cal.Rptr. 68], in

---

[1]Petitioner also alleged causes of action for intentional infliction of emotional distress, constructive discharge in violation of public policy, intentional interference with business relations and prospective economic advantage, and negligent infliction of emotional distress. No issue is raised in this proceeding regarding these additional causes of action. Nor is any issue raised concerning the trial court's ruling sustaining the demurrer of real party in interest Michael Levy to the cause of action for "Intentional Interference with Business Relations—Prospective Economic Advantage."

support of the assertion that sexually suggestive remarks by one male to another with no physical touching did not constitute an unfair employment practice under Government Code section 12940.

Real party in interest Michael Levy filed a separate demurrer to the first cause of action in which he asserted facts contradictory to those alleged in petitioner's complaint and argued that "[e]ven assuming the truth of plaintiff's allegations, plaintiff only alleges incidents of 'sexually explicit jokes, comments and innuendoes [sic],' and the use of 'profane and sexually explicit language.' " These allegations, Levy argued, could not state a cause of action for sexual harassment as a matter of law.

The trial court sustained the demurrers without leave to amend. The minute order reflecting this ruling stated "Not a sex harassment case[.]"

Petitioner filed a motion for reconsideration supported by a proposed second amended complaint which added allegations to the effect that the other named defendants allowed defendant Michael Levy to surround himself with "young, attractive males and employment decisions were made and job duties were assigned on the basis of Levy's attraction to male employees. As such, a hostile environment was created in which males were treated differentially from females and plaintiff alleges that he was discriminated on the basis of his gender." Petitioner's motion for reconsideration was denied.

## DISCUSSION

Government Code section 12940 defines 11 unlawful employment practices prohibited by the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), including sexual discrimination, a violation of subdivision (a),[2] and sexual harassment, a violation of subdivision (h).[3] There is some overlapping of prohibited practices in these two sections, as recognized by cases holding that sexual harassment is a form of discrimination. (*Meritor Savings Bank* v. *Vinson* (1986) 477 U.S. 57, 67 [91 L.Ed.2d

---

[2]Subdivision (a) of section 12940 declares that it is unlawful "[f]or an employer, because of the race, religion, creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, or sex of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions or privileges of employment."

[3]Subdivision (h) of section 12940 declares that it is unlawful "[f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age, to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or

49, 59-60, 106 S.Ct. 2399]; *Accardi* v. *Superior Court* (1993) 17 Cal.App.4th 341, 347 [21 Cal.Rptr.2d 292].) The primary distinction between the two is that an employee alleging discrimination in violation of subdivision (a) must allege facts demonstrating that he or she was discriminated against "in compensation or in terms, conditions or privileges of employment" (Gov. Code, § 12940, subd. (a)) whereas an employee alleging discrimination in violation of subdivision (h) need not allege loss of tangible job benefits. (Gov. Code, § 12940, subd. (h).)

■■■ Petitioner's cause of action was for sexual harassment in violation of subdivision (h). ■■■ California case law recognizes two theories upon which sexual harassment may be alleged. The first is quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances. The second is hostile work environment, where the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment. (*Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 607 [262 Cal.Rptr. 842].)

■■■ Petitioner's first amended complaint invoked both theories by alleging that Levy and one of Levy's employees informed petitioner that he would "receive more money on his writing deal if he came to the hotel suite" (quid pro quo) and by alleging that a hostile, sexually harassing environment existed which disrupted petitioner's "emotional tranquility in the workplace and otherwise interfered with and undermined his personal sense of well being" (hostile environment).

■■■ A cause of action for quid pro quo harassment involves the behavior most commonly regarded as sexual harassment, including, e.g., sexual propositions, unwarranted graphic discussion of sexual acts, and commentary on the employee's body and the sexual uses to which it could be put. (*Donald Schriver, Inc.* v. *Fair Employment & Housing Com.* (1986) 220 Cal.App.3d 396, 405 [230 Cal.Rptr. 620].) To state a cause of action on this theory, is it sufficient to allege that a term of employment was expressly or impliedly conditioned upon acceptance of a supervisor's unwelcome sexual advances. (See *Bihun* v. *AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 1005 [16 Cal.Rptr.2d 787].)

By contrast, a cause of action for sexual harassment on a hostile environment theory need not allege any sexual advances whatsoever. (*Accardi* v.

supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment."

*Superior Court, supra,* 17 Cal.App.4th at p. 347.) A cause of action on this theory is stated where it is alleged that an employer created a hostile environment for an employee because of that employee's sex. (*Accardi* v. *Superior Court, supra,* 17 Cal.App.3d at pp. 344, 348.) For example, in *Accardi,* the reviewing court held a cause of action had been stated upon factual allegations that a woman police officer had been subjected to a decade-long campaign against her which included threats, rejection, mockery, double standards, and intimidation. (*Id.* at pp. 349-350.)

As might be expected, cases sometimes involve a hybrid of these two theories. A hostile work environment may result from inappropriate sexual conduct in the workplace. Under such circumstances the plaintiff may allege that the unwelcome sexual advances were sufficiently pervasive so as to also alter the conditions of employment and create an abusive work environment. (See *Boler* v. *Superior Court* (1987) 201 Cal.App.3d 467, 469 [247 Cal.Rptr. 185]; *Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at p. 608.)

The only reported California case dealing with alleged sexual harassment by a member of the same sex was alleged as a hostile environment case, but actually involved a hybrid situation. That case is *Hart* v. *National Mortgage & Land Co., supra,* 189 Cal.App.3d 1420. There, plaintiff Hart testified in his deposition that he had been subjected to genital grabbing, attempted mounting, sexually suggestive gestures, and crude remarks by a male coemployee named Campbell. Hart described Campbell as a "pervert" and stated that he believed Campbell was "singling him out for this treatment" (189 Cal.App.3d at p. 1424), but that he did not believe Campbell was interested in having sex with him.

The employer's motion for summary judgment was granted on the ground that "Government Code section 12940 . . . did not apply." (*Hart* v. *National Mortgage & Land Co., supra,* 189 Cal.App.3d at p. 1426.) The reviewing court affirmed, explaining tersely: "Government Code section 12940, as here pertinent, prohibits an employer from discriminating against his employee in the 'terms, conditions or privileges of employment . . . *because of sex . . .* [or] haras[sing] [him] . . . *because of sex.*' Hart does not here allege, nor do the depositions show, that Campbell harassed Hart because of Hart's sex. Absent this, section 12940 does not apply." (*Hart* v. *National Mortgage & Land Co., supra,* at p. 1426.)

*Hart* is of questionable value as a legal precedent. The reviewing court's failure to deal with the undeniably sexual nature of the conduct to which Hart was subjected is, to say the least, troublesome. Such conduct, whether

motivated by hostility or by sexual interest, is always "because of sex" regardless of the sex of the victim. Indeed, real parties in interest herein admit that if Hart had been a woman, the conduct alleged in that case would "unquestionably have constituted sexual harassment under § 12940 . . . ." The *Hart* court's failure to mention, much less discuss, this double standard leaves the opinion vulnerable to criticism. Additionally, to the extent that the opinion turned on the lack of showing of discrimination in the terms, conditions or privileges of employment, it rested upon subdivision (a) of Government Code section 12940, not subdivision (h) on which the instant case is based.

■■ We find no basis of support in the statutory language for the contention that the Legislature intended to limit protection from sexual harassment to male-female harassment. Although the statute does not specify whether it prohibits "same gender" harassment or "other gender" harassment, no ambiguity is created by this omission. Common usage indicates that in the absence of a modifying adjective, the Legislature intended to prohibit sexual harassment in all cases. (See *State Farm Mut. Auto. Ins. Co.* v. *Haight* (1988) 205 Cal.App.3d 223, 239 [252 Cal.Rptr. 162] [absence of limiting adjectives as indicative of legislative intent not to limit application of statute].)

This conclusion finds support in decisions of the Fair Employment and Housing Commission[4] and in federal law interpreting similar provisions of title VII of the Civil Rights Act of 1964.[5] The commission has interpreted the statute to apply to harassment by a member of the same sex. (See *Dept. Fair Emp. & Hous.* v. *Ring* (1985) No. 85-17, pp. 8, 20; *Dept. Fair Emp. & Hous.* v. *Ring* (1985) No. 85-18, p. 5 [male employer subjected his male employee to sexual threats, comments and advances]; *Dept. Fair Emp. & Hous.* v. *Villazar de la Cruz, Inc.* (1990) No. 90-04, p. 7 [a female employee subjected to breast grabbing by another female employee].) The weight of federal authority is in accord. (See, e.g., *Joyner* v. *AAA Cooper Transp.*

[4]The Legislature has vested the Fair Employment and Housing Commission with the power to "adopt, promulgate, amend, and rescind suitable rules, regulations, and standards . . . to interpret, implement, and apply all provisions of [FEHA] . . . ." (Gov. Code, § 12935.) Therefore, reviewing courts accord great respect to its interpretations of the statute unless clearly erroneous. (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935]; *Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at p. 606.)

[5]Section 703 of title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" (42 U.S.C. § 2000e-2(a)(1).) Where there is a dearth of state authority in an area of emerging law, such as employment discrimination, it is appropriate to consider federal cases interpreting title VII. (*Ibarbia* v. *Regents of University of California* (1987) 191 Cal.App.3d 1318, 1326 [237 Cal.Rptr. 92].)

(M.D.Ala. 1983) 597 F.Supp. 537, 541, affd. (1984) 749 F.2d 732 ["unwelcomed homosexual harassment also states a violation of Title VII." (Italics omitted.)]; *Wright* v. *Methodist Youth Services, Inc.* (N.D.Ill. 1981) 511 F.Supp. 307, 309-310 [termination due to refusal of homosexual advances states a claim under title VII]; *Polly* v. *Houston Lighting & Power Co.* (S.D.Tex. 1993) 825 F.Supp. 135, 137 ["Title VII was intended to apply to claims of harassment based on sex, without regard to the gender of the complainant or the harassing party. . . . The victim does not have to be of the opposite sex from the harasser."].)

In an effort to avoid the conclusion that the statute applies in this case, real parties in interest urge that the Legislature did not intend to "protect members of the empowered majority (men) from one another." This rather remarkable assertion finds some support in *Goluszek* v. *Smith* (N.D.Ill. 1988) 697 F.Supp. 1452, a case in which similar provisions of title VII were interpreted. The reviewing court in *Goluszek* concluded that a male employee was harassed by other male employees because of his sex (697 F.Supp. at p. 1456), but held that the conduct to which he was subjected was "not the type of conduct Congress intended to sanction when it enacted Title VII." (697 F.Supp. at p. 1456.)[6] The evidence showed that other male employees told the plaintiff in crude sexual terms that he should get married and should go out with a certain woman employee in order to have sex with her. They also asked him about his sexual experience, accused him of being gay or bisexual, and made other sexual comments. More than one of the other male employees "poked him in the buttocks with a stick." (697 F.Supp. at p. 1454.) The court explained: "Goluszek may have been harassed 'because' he is a male, but that harassment was not of a kind which created an anti-male environment in the workplace. [Citation.]" (697 F.Supp. at p. 1456.) The court concluded that because Goluszek worked in a male dominated environment, the harassment had to be tolerated. We cannot agree. This is, as the court acknowledged, harassment "because of sex." A person subjected to such behavior in California is entitled to the protection provided by Government Code section 12940 regardless of whether he or she is otherwise "empowered."

We are similarly unpersuaded by the policy arguments advanced by real parties in interest. Their fear that freeing "everyone from sexual remarks and conduct" (italics omitted) would "put the First Amendment right of free speech on the endangered species list" reveals a superficial understanding of

---

[6]There is a noticeable absence of any statutory analysis in either *Goluszek* v. *Smith, supra,* 697 F.Supp. 1452, 1456, or *Hart* v. *National Mortgage & Land Co., supra,* 189 Cal.App.3d 1420, in support of the conclusion that the legislative body intended to exclude same gender sexual harassment from the purview of the statute.

its protections. (See *People* v. *Hernandez* (1991) 231 Cal.App.3d 1376, 1381 [283 Cal.Rptr. 81] [rejecting a claimed violation of the right of free speech where the statutes in question protected a legitimate state interest and proscribed conduct rather than pure speech].) Real parties' argument also suffers from being predicated upon the inaccurate factual assertion that the only alleged basis for petitioner's claim is "some sexually suggestive remarks allegedly made in private to Petitioner by his supervisor."

Nor do we share real parties' concern that allowing a cause of action for same gender sexual harassment will "make an inquiry into the sexual orientation of the male supervisor an absolute necessity." The focus of a cause of action brought pursuant to Government Code section 12940 is whether the victim has been subjected to sexual harassment, not what motivated the harasser.[7]

We therefore conclude that a cause of action for sexual harassment in violation of Government Code section 12940, subdivision (h) may be stated by a member of the same sex as the harasser, whether based on the quid pro quo theory or the hostile environment theory or a hybrid of both theories.

Applying this analysis to the allegations of petitioner's first amended complaint, the alleged acts are sufficient to state a cause of action for sexual harassment within the meaning of Government Code section 12940, subdivision (h). Therefore, the trial court erred in sustaining respondents' general demurrer.[8]

■ The trial court also erred in denying petitioner's motion for reconsideration. A plaintiff is entitled to submit a proposed amended complaint by way of a motion for reconsideration. (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].) If an amended complaint states any cause of action, the trial court is obligated to vacate its order sustaining demurrers without leave to amend and make a different order granting leave to file an amended complaint. (*Ibid.*)

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying petitioner's motion for reconsideration and to make a new

---

[7] We are aware of the holding in *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 490 [156 Cal.Rptr. 14, 595 P.2d 592], that the California Fair Employment Practice Act, the predecessor of FEHA, "did not contemplate discrimination against homosexuals." We do not base our decision in this case to any degree upon the sexual preference of the harassed employee.

[8] The documents before us reveal that real parties in interest Silver Pictures, Warner Brothers, and Joel Silver also filed a special demurrer and motion to strike. Those documents have not been provided to this court. If, however, the special demurrer was predicated upon the failure to directly allege harassment because of petitioner's sex, the trial court abused its discretion in denying leave to amend.

and different order granting reconsideration and leave to file an amended complaint.

Epstein, J., and Vogel (C. S.), J., concurred.