MICHAEL, Circuit Judge,
dissenting:
It is too early to write this case off to meanness and horseplay. For now there is a material factual issue whether McWilliams was discriminated against because of his sex.[1] In addition, McWilliams has forecast sufficient facts to survive summary judgment on the issue of whether his employer had sufficient knowledge of the Title VII violations to be held accountable. I, therefore, respectfully dissent.
I.
I believe the majority makes a mistake to affirm summary judgment on the ground that there is no allegation that McWilliams and his male harassers are of different sexual orientations. That puts too fine a point on the “discrimination] ... because of [his] ... sex ” issue. I would simply hold that Title VII is implicated whenever a person physically abuses a co-worker for sexual satisfaction or propositions or pressures a co-worker out of sexual interest or desire. This can be established by an account of what the harasser did or said to the victim, and proof of the harasser’s sexual orientation should not be required. The harassment must, of course, be sufficiently pervasive to create a hostile working environment.
I recognize that in a same-sex harassment claim, evidence of sexual orientation could be relevant to either side’s case. However, it should not be elevated to a required element of the plaintiffs proof. See Mogilefsky v. Superior Court, 20 Cal.App.4th 1409, 1416, 26 Cal.Rptr.2d 116 (1993). That would burden the statute too much because the focus would shift from an examination of what happened to the plaintiff to a pursuit (surely to be complicated, far-ranging and elusive) of the “true” sexual orientation of the harasser.
Here, McWilliams alleges that his co-workers (i)“approach[ed] him in a sexual manner, toueh[ed] him,” Amend.Compl. ¶ 6, (ii) “asked him to perform sexual acts on them,” id. ¶ 7 and (iii) “restrained him and touched him in a sexual manner,” id. ¶ 8. The details are amply provided in the summary judgment record. On several occasions defendant *1199 Witsman told McWilliams that he wanted to have sex with him. At least once Witsman offered McWilliams money for sex. Witsman would do things such as flick his tongue at McWilliams, say “I love you, I love you,” and ask for sex. Witsman would also follow McWilliams into the restroom where Wits-man, with one hand in his unzipped fly, would put his arm around McWilliams or invite him into a stall. On several occasions Witsman asked McWilliams if he (Witsman) could masturbate McWilliams. Once when McWil-liams was working under the dashboard of a bus, Witsman came up and rubbed McWil-liams’ penis until it became erect. At least three times defendants Pinnock, Riddle and Witsman tied McWilliams’ hands together, blindfolded him and pushed him to his knees. During one of these incidents Witsman put his finger in McWilliams’ mouth and simulated a sex act. In a separate incident, Riddle and Witsman held McWilliams down while Pinnock exposed himself and defendant Shelton put a broom handle between McWilliams’ buttocks. These assaults and propositions were against the backdrop of constant, obsessive talk about sex — and not just male-female sex. One defendant even talked about having sex with little boys.
I would not require McWilliams to allege on top of these facts that his harassers were homosexual. The acts of assault and harassment are sufficiently direct and suggestive by themselves to raise the question whether they were done “because of [McWilliams’] ... sex.”
I appreciate the majority’s concern that Title VII not be trivialized to encompass claims for horseplay of a sexual variety. Fortunately, courts are already dealing with this concern and are distinguishing between actionable hostility and non-actionable horseplay. E.g., Reed v. Shepard, 939 F.2d 484, 491 (7th Cir.1991) (plaintiff who relished sexual horseplay could not recover under Title VII); Easton v. Crossland Mortgage Corp., 905 F.Supp. 1368, 1381-82 (C.D.Cal.1995) (same); Niccoli v. Runyon, 1995 WL 807089, *3 & n. 9, 1995 U.S. Dist. LEXIS 14499, *10 & n. 9 (E.D.Va.1995); Quick v. Donaldson Co., 895 F.Supp. 1288, 1296 (S.D.Iowa 1995) (“To say ‘bagging’ [sneaking up behind a man and grabbing a testicle] is merely horseplay is to trivialize its cruel and physical nature. Yet, to say ‘bagging’ is purely a sexually motivated activity exaggerates the sexual component involved [because the ‘baggers’ were neither] demanding sexual favors, [nor] were expressing sexual interest.”); Taylor v. Nat’l Group of Cos., 872 F.Supp. 462, 464 (N.D.Ohio 1994) (jury question presented as to whether conduct was merely horseplay engaged in “in a spirit of jocularity” or was “sexually hostile”); D.R. v. Middle Bucks Area Voc. Tech. School, 1991 WL 14082, *7, 1991 U.S. Dist. LEXIS 1292, *19-20 (E.D.Pa.1991) (school held not liable under 42 U.S.C. § 1983 when it had no knowledge of sexual assaults and harassment but knew only of “noncriminal horseplay” and “inappropriate and incorrigible classroom behavior”), aff'd en banc, 972 F.2d 1364 (3d Cir.1992), cert. denied, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); Smith v. Acme Spinning. Co., 40 Fair Empl. Prac. Cas. (BNA) 1104, 1105 (W.D.N.C.1986) (“on-the-job horseplay” in which plaintiff voluntarily participated and sometimes initiated not actionable as hostile environment sexual harassment); Vermett v. Hough, 627 F.Supp. 587, 599 (W.D.Mich.1986) (plaintiff found office horseplay to be amusing, except when she was the target of the joke; Title VII claim denied).
McWilliams has forecast sufficient evidence of abuse and pressure to avoid summary judgment on the basis of horseplay. The facts, construed in McWilliams’ favor, are sufficient to show that he was subject to a hostile work environment because of his sex. I would remand his Title VII claim for a trial.
II.
The district court also erred in granting the Board of Supervisors summary judgment on the Title VII claim on the ground that the Board lacked actual or constructive knowledge of the hostile workplace environment to which McWilliams was subjected.[2] McWil-liams’ Title VII claim against the Board is viable if knowledge about the abuse he suf *1200 fered “was imputable on some factual basis to” it. Spicer v. Commonwealth of Virginia, 66 F.3d 705, 710 (4th Cir.1995) (en banc).
McWilliams produced sufficient evidence to create a genuine issue of material fact as to whether the EMTA supervisors had actual knowledge of a Title VII violation. McWil-liams complained to supervisor Lee Cash at least three times that his co-workers were “teasing him about girls and other things.” [3] Later, McWilliams expressly complained to Cash about the way Witsman would flick his tongue at him and say, “I love you, I love you.” Mike Stutzman, an assistant supervisor at EMTA, told Cash that the teasing was sexual in nature and involved indecent exposure. Billy Davis, EMTA’s night foreman, also told Cash and another supervisor, Miguel Boschulte, as well as Buck George, EMTA’s day shift superintendent, that McWilliams was being harassed. Cash also learned from Witsman himself that Witsman had been teasing McWilliams. Another superintendent, Frank Knapp, held a meeting to discuss the way McWilliams was being mistreated. Two back-up supervisors, Dave Puckett and John Bowden, even participated in the condom incident described by the majority. See ante at 1193-94. These facts about the supervisors’ knowledge of the harassment provide an ample basis for imputing knowledge to the Board.
* * *
For all of these reasons, I would allow McWilliams to proceed with his Title VII claim.

. I would find same-sex harassment in the workplace to be actionable under Title VII. See, e.g., Sardinia v. Dellwood Foods, Inc., 1995 WL 640502, *3, 1995 U.S. Dist. LEXIS 16073, *8 ("dominant trend” is to allow such claims) (S.D.N.Y. Oct. 30, 1995), interlocutory appeal certified, 1995 WL 710205, 1995 U.S. Dist. LEXIS 17967 (S.D.N.Y. Dec. 1, 1995); King v. M.R. Brown, Inc., 911 F.Supp. 161, 166-67 (E.D.Pa. *1199 1995) ("the trend is to permit such claims to proceed”).

. Because it affirms on other grounds, the majority does not reach this issue.

. Because Cash knew that McWilliams was learning-disabled and found it difficult to communicate at an adult level. Cash should have inquired further at this point.