107 Cal.Rptr.2d 15 (2001)
88 Cal.App.4th 1162
Alex VALDEZ, Plaintiff and Appellant,
v.
CLAYTON INDUSTRIES, INC., et al., Defendants and Respondents.
No. B139582.
Court of Appeal, Second District, Division Four.
May 8, 2001.
As Modified on Denial of Rehearing June 4, 2001.
Review Granted August 8, 2001.
*19 Benedon & Serlin, Douglas G. Benedon, Woodland Hills, and Gerald M. Serlin; Mancini & Gallagher, Marcus A. Mancini, Valencia, Mary Ann Gallagher, and David A. Cohn, Woodland Hills, for Plaintiff and Appellant.
Troop Steuber Pasich Reddick & Tobey, Jon D. Meer, and Christopher J. Manfredi, for Defendants and Respondents.
CURRY, J.
Appellant Alex Valdez challenges summary judgment granted in favor of respondents Clayton Industries, Inc. (Clayton), and Larry Metzler on Valdez's complaint for sexual harassment and retaliation in violation of the California Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq.[1] We reverse.

RELEVANT PROCEDURAL BACKGROUND
Valdez initiated this action in February 1999. On September 22, 1999, Valdez filed a third amended complaint against Clayton and Metzler, alleging a single claim for sexual harassment and retaliation under FEHA (Gov.Code, § 12900 et seq.), and seeking compensatory and punitive damages.
The third amended complaint alleges the following facts: Clayton employed Valdez as a mechanic assembler. Metzler was Valdez's supervisor. From December 1996 through March 4, 1998, Metzler sexually harassed Valdez, in several ways, including repeatedly saying to him, "I need sex" and "I need a blow job." Valdez complained to his immediate supervisor, John Gonzalez, and to Metzler. Despite these complaints, Metzler continued his harassment, and Gonzalez did nothing to stop it. In February 1998, Valdez complained about the harassment to Cyril Silva, Clayton's human resources manager. Silva did not act on this complaint. On March 4, 1998, Clayton and Metzler retaliated against Valdez by terminating him on the pretext that there was a lack of work.
On November 4, 1999, Clayton and Metzler filed a motion for summary judgment or, in the alternative, summary adjudication on the allegations of sexual harassment and of retaliatory termination. The trial court granted summary judgment on December 9, 1999, concluding that Valdez's allegations of sexual harassment were time-barred, and he could not establish that he was terminated in retaliation for his complaints about harassment. Judgment was filed on January 6, 2000.

DISCUSSION
Valdez contends that the trial court erred in granting summary judgment. We agree.

A. Standards of Review

"A summary adjudication motion is subject to the same rules and procedures as a summary judgment motion. Both are reviewed de novo. [Citations.]" (Lunardi v. Great-West Life Assurance *20 Co. (1995) 37 Cal.App.4th 807, 819, 44 Cal. Rptr.2d 56.)
"A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiffs asserted causes of action can prevail. [Citation.]" (Molko v. Holy Spirit Assn. (1988) 46 Cal.3d 1092, 1107, 252 Cal.Rptr. 122, 762 P.2d 46.) "`Review of a summary judgment motion by an appellate court involves application of the same three-step process required of the trial court. [Citation.]' " (Bostrom v. County of San Bernardino (1995) 35 Cal.App.4th 1654, 1662, 42 Cal.Rptr.2d 669.) The three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact. (See ibid.)
These steps reflect a series of burden shifts. A defendant moving for summary judgment has the burden of "negating] a necessary element of the plaintiffs case, and demonstrating] that under no hypothesis is there a material issue of fact that requires the process of a trial. [Citation.]" (Molko v. Holy Spirit Assn., supra, 46 Cal.3d at p. 1107, 252 Cal.Rptr. 122, 762 P.2d 46.) To do that, the defendant may rely either on affirmative evidence or discovery responses of the plaintiff showing the absence of evidence necessary to establish at least one essential element of the plaintiffs case. (Union Bank v. Superior Court (1995) 31 Cal.App.4th 573, 589-590, 37 Cal.Rptr.2d 653.) Once the defendant carries this substantive burden, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to the plaintiffs case. (Barber v. Marina Sailing, Inc. (1995) 36 Cal.App.4th 558, 562, 42 Cal.Rptr.2d 697.) All doubts as to whether there are any triable issues of fact are to be resolved in favor of the party opposing summary judgment. (Ibid.)
Finally, when, as here, respondents sought summary adjudication on appellant's distinguishable claims as an alternative to summary judgment, we may direct summary adjudication on any of the claims that fail for want of a triable issue of fact. (Yu v. Signet Bank/Virginia (1999) 69 Cal. App.4th 1377, 1397-1398, 82 Cal.Rptr.2d 304; Reyes v. Kosha (1998) 65 Cal.App.4th 451, 466, fn. 6, 76 Cal.Rptr.2d 457.)

B. Sexual Harassment

As a basis for summary adjudication on Valdez's allegations of sexual harassment, respondents contended that Valdez could not show that he suffered unwelcome sexual harassment "because of ... [his] sex" (§ 12940, subd. (j)(1)).
Section 12940, subdivision (j)(1), provides that it is an unlawful employment practice "[f]or an employer ... or any other person, because of ... sex ... to harass an employee [or] applicant.... An entity shall take all reasonable steps to prevent harassment from occurring." Under these provisions, employers and their employees, including supervisory employees, are liable for their own acts of harassment. (Page v. Superior Court (1995) 31 Cal.App.4th 1206, 1210-1214, 37 Cal.Rptr.2d 529; Janken v. GM Hughes Electronics (1996) 46 Cal. App.4th 55, 67, fn. 19, 53 Cal.Rptr.2d 741.) Furthermore, "an employer is strictly liable for the harassment of an employee by an agent or supervisor.... [Citations.]" (Fiol v. Doellstedt (1996) 50 Cal.App.4th 1318, 1328, 58 Cal.Rptr.2d 308.)
"California case law recognizes two theories upon which sexual harassment *21 may be alleged. The first is quid pro quo harassment, where a term of employment is conditioned upon submission to unwelcome sexual advances. The second is hostile work environment, where the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive work environment." (Mogilefsky v. Superior Court (1993) 20 Cal.App.4th 1409, 1414, 26 Cal.Rptr.2d 116.)
Sexual harassment under the second theory "does not necessarily involve sexual conduct. It need not have anything to do with lewd acts, double entendres or sexual advances. Sexual harassment may involve conduct, whether blatant or subtle, that discriminates against a person solely because of that person's sex." (Accardi v. Superior Court (1993) 17 Cal.App.4th 341, 345, 21 Cal. Rptr.2d 292.) "Whether the sexual conduct complained of is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. [Citation.] The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended. [Citation.]" (Fisher v. San Pedro Peninsula Hospital (1989) 214 Cal.App.3d 590, 609-610, 262 Cal.Rptr. 842, fn. omitted.)
In seeking summary adjudication on Valdez's allegations of sexual harassment, respondents pointed to Valdez's deposition testimony indicating that virtually all the employees in Valdez's work environment at Clayton were male, that the use of profanity was common, and that Valdez and his coworkers often told jokes with sexual content. Valdez himself gave Metzler a Christmas card with a vagina and a candy cane on the front, a set of dice whose faces displayed sexual terms, and multi-colored condoms packaged to look like candy.
Valdez responded with his deposition testimony and other evidence supporting the following version of the underlying events: Three months after Valdez began working at Clayton, Metzler referred to Valdez as a "whore" or told him that he needed a blow job at least once a week. Valdez recalled several such incidents.
In March 1997, Metzler walked up to Valdez as he worked on the assembly line, put his left arm around Valdez, and told him that he needed a blow job. Later, Metzler made a similar remark to Valdez while they were in a restroom. Valdez responded, "I can't help you."
While Valdez was bending over to pick up a part on the assembly line, Metzler approached him, said that he needed a blow job, grabbed his crotch, and pretended to unzip his pants. Valdez complained to Gonzalez, his immediate supervisor.
As Valdez was crouched down over the assembly line, Metzler approached him from behind, immobilized Valdez by grabbing him by the neck, and said, "Oh baby, oh baby." Valdez complained to Gonzalez, who told Valdez to talk to Metzler.
According to Valdez's deposition testimony, the following exchange occurred when he asked Metzler to stop the conduct in question: "He said thathe turned around and told mehe goes, `Who hired you?' I said, `Clayton.' He goes, `No. Who walked you around in here when you first got hired?' I said, `You did.' Then he goes, `Who's your boss?' I go, `Clayton is.' `No, no, no. Who's your boss?' I go, 'You are.' And then he says, `Okay.' That's all he said."
Sometime after this incident, Valdez was on the assembly line drilling holes in a kneeling position. Metzler said, "Oh, *22 you're wearing knee pads. That's good. That way it won't hurt when you're giving me a blow job." Valdez complained to Gonzalez, who promised to speak to Metzler.
Later, Valdez asked Gonzalez how long they were going to work on a particular Saturday. Metzler interjected, "Well, you guys are just dyno whores." Valdez asked Metzler what he meant, who responded, "Yeah, you're just cheap whores. We work you guys like prostitutes." Gonzalez overheard this remark and laughed.
When Valdez asked Gonzalez for a day off to celebrate his birthday, Metzler told Valdez, "Oh yeah. Well, I'll give you your birthday off and more if you give me a blow job, or a BJ." Gonzalez laughed at this remark.
While Valdez was eating a large burrito, Metzler looked over at him and said, "Hey, I like the way you grip that burrito and the way you open your mouth so wide."
To convince Metzler that he was a "good guy" and to encourage Metzler to leave him alone, he gave Metzler a sexually-themed Christmas card and some adult novelties. Nonetheless, the incidents continued. Shortly before Valdez was terminated, Metzler walked up to Valdez on February 25, 1998, and said that he needed a blow job.
These incidents humiliated Valdez and affected his job performance. Valdez feared Metzler and feared for his job. On several occasions, Valdez thought that Metzler was seriously asking for oral sex.
In our view, Valdez's evidence raises triable issues regarding whether he suffered actionable sexual harassment within the meaning of section 12940, subdivision (j)(1). As the court explained in Mogilefsky v. Superior Court, supra, 20 Cal.App.4th at page 1416, 26 Cal.Rptr.2d 116, "the Legislature intended to prohibit sexual harassment in all cases," including "`same gender'" harassment between males. Furthermore, the court in Mogilefsky determined that a claim for same gender harassment does not require an inquiry into the harasser's sexual orientation, reasoning that "[t]he focus of a cause of action brought pursuant to [ ]section 12940 is whether the victim has been subjected to sexual harassment, not what motivated the harasser." (20 Cal.App.4th at p. 1418, 26 Cal.Rptr.2d 116.)
In reaching these conclusions, the court in Mogilefsky rejected Hart v. National Mortgage & Land Co. (1987) 189 Cal. App.3d 1420, 235 Cal.Rptr. 68. In Hart, a male employee was subjected to genital grabbing, attempted mounting, sexually suggestive gestures, and crude remarks by a male coemployee. (189 Cal.App.3d at p. 1424, 235 Cal.Rptr. 68.) The victim of this conduct described the perpetrator as a "pervert" who had singled him out, but he did not believe that the perpetrator intended to have sex with him. (Id. at p. 1424, 235 Cal.Rptr. 68.) The court in Hart held that this conduct did not support a claim under section 12940. Stating that Hart was of questionable value as precedent, the court in Mogilefsky reasoned, inter alia, that the perpetrator's conduct was "because of sex," regardless of whether it was motivated by hostility or sexual interest. (Mogilefsky v. Superior Court, supra, 20 Cal.App.4th at pp. 1415-1416, 26 Cal. Rptr.2d 116.)
The court in Mogilefsky also rejected the contention that section 12940 does not "`protect members of the empowered majority (men) from one another,'" (Mogilefsky v. Superior Court, supra, 20 Cal. App.4th at p. 1417, 26 Cal.Rptr.2d 116) as well as authority offered in support of this contention, namely, Goluszek v. H.P.Smith (N.D.Ill.1988) 697 F.Supp. 1452, abrogated in Oncale v. Sundowner Offshore Services, *23 Inc. (1998) 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201. In Goluszek, a male employee was told by male coworkers in crude sexual terms that he should get married and that he should have sex with a particular woman. (697 F.Supp. at p. 1454.) In addition, the male coworkers asked him about his sexual experience, accused him of being gay or homosexual, made other comments, and poked him in the buttocks with a stick. (Ibid.) Interpreting analogous provisions of title VII of the Civil Rights Act of 1964 (hereafter title VII; 42 U.S.C. § 2000e et seq.), the federal district court in Goluszek concluded that title VII did not bar such harassment. Commenting on the facts in Goluszek, the Mogilefsky court stated that "[a] person subjected to such behavior in California is entitled to the protection provided by [ ] section 12940 regardless of whether he ... is otherwise `empowered.'" (Mogilefsky v. Superior Court, supra, 20 Cal.App.4th at p. 1417, 26 Cal.Rptr.2d 116.)
Here, Valdez's evidence indicates that Metzler repeatedly told Valdez that he needed oral sex or that Valdez was a whore, and Valdez often thought that he was seriously requesting sex. Metzler's remarks were sometimes made in ways likely to humiliate Valdez, and were accompanied by degrading physical gestures. In view of the resemblance between the situation in Goluszek and the events depicted by Valdez, Mogilefsky entails that there are triable issues about sexual harassment.
Respondents contend otherwise, citing Oncale v. Sundowner Offshore Services, Inc., supra, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201, Johnson v. Hondo, Inc. (7th Cir.1997) 125 F.3d 408, and Gross v. Burggraf Const. Co. (10th Cir.1995) 53 F.3d 1531 for the proposition that Valdez's evidence would not support a claim for sexual harassment under title VII. We recognize that to the extent that the statutory language of FEHA is ambiguous, California courts often rely on federal cases interpreting title VII, which resembles FEHA in many respects. (Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 498, 59 Cal.Rptr.2d 20, 926 P.2d 1114; Flait v. North American Watch Corp. (1992) 3 Cal. App.4th 467, 475-476, 4 Cal.Rptr.2d 522.) However, in some respects, FEHA may go farther than title VII in offering protection against sexual harassment. (See Flait v. North American Watch Corp., supra, 3 Cal.App.4th at p. 476, 4 Cal.Rptr.2d 522.) Regardless of how Valdez would fare under title VII, he has a tenable harassment claim under FEHA, in view of Mogilefsky.
Respondents also contend that Valdez cannot show that Metzler's conduct was unwelcome, pointing to the evidence that sexual jokes and remarks were common in Valdez's workplace and that Valdez gave Metzler items with a sexual theme. We are not persuaded.
Generally, a party asserting a claim for environmental sexual harassment must show that the conduct at issue was unwelcome. (Fisher v. San Pedro Peninsula Hospital, supra, 214 Cal.App.3d at p. 608, 262 Cal.Rptr. 842.) Here, Valdez's evidence indicates that, unlike the sexual jokes and remarks that respondents cite, Metzler's conduct targeted Valdez, and Valdez repeatedly complained about it to Gonzalez and Metzler. Furthermore, Valdez's evidence implies that Valdez gave Metzler the items in question only after Metzler began his conduct and Valdez made his unsuccessful complaints. Finally, Valdez testified that he gave Metzler the items solely to halt Metzler's conduct. On this evidence, a reasonable jury could conclude that Metzler's conduct was unwelcome.
*24 In sum, there are triable issues regarding whether Valdez suffered unwelcome sexual harassment "because of ... [his] sex" (§ 12940, subd. (j)(1)).

C. Prima Facie Case of Retaliation

Respondents also sought summary adjudication regarding Valdez's allegations of retaliatory termination against Clayton and Metzler, contending that he could not establish a prima facie case of retaliation.
Section 12940, subdivision (h), provides that it is an unlawful employment practice "[f]or any employer ... to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."
"The elements of title VII and [FEHA] claims require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant articulate a legitimate nonretaliatory explanation for its acts, and (3) the plaintiff show that the defendant's proffered explanation is merely a pretext for the illegal termination. [Citations.] [H] To establish a prima facie case, the [employee] must show that he engaged in a protected activity, his employer subjected him to adverse employment action, and there is a causal link between the protected activity and the employer's action. [Citations.]" (Flait v. North American Watch Corp., supra, 3 Cal.App.4th at p. 476, 4 Cal.Rptr.2d 522.)
Respondents' specific contention is that Valdez cannot establish the causal link required for a prima facie case, and for the same reasons, Valdez cannot establish that the grounds for his termination were pretextual. On this matter, we observe that direct evidence of an employer's retaliatory intent is not required to prove causation. (Flait v. North American Watch Corp., supra, 3 Cal.App.4th at p. 478, 4 Cal.Rptr.2d 522.) Rather, "`[t]he causal link may be established by an inference derived from circumstantial evidence, "such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision."' [Citations.]" (Fisher v. San Pedro Peninsula Hospital, supra, 214 Cal.App.3d at p. 615, 262 Cal. Rptr. 842, quoting Jordan v. Clark (9th Cir.1988) 847 F.2d 1368, 1376.) Similarly, circumstantial evidence may be used to establish pretext. Thus, evidence regarding the timing of the termination decision, the identity of the decision maker, and the terminated person's performance is relevant to establish that the reason offered for termination is pretextual. (Flait v. North American Watch Corp., supra, 3 Cal.App.4th at p. 479, 4 Cal.Rptr.2d 522.)
Here, respondents submitted excerpts from Valdez's deposition testimony indicating that three other employees were terminated with Valdez, that he was not treated differently from these other employees, he had "no facts" that his sexual harassment complaints were a factor in his termination, and that he had no knowledge concerning whether these employees has made complaints for sexual harassment. In opposition, Valdez submitted his deposition testimony supporting following sequence of events: After Valdez's complaints to Gonzalez and Metzler failed to halt Metzler's conduct, Valdez met with Cyril Silva, Clayton's Human Resources Director, on or about February 12, 1998. Without mentioning Metzler's name, Valdez told Silva that someone "higher up" and who had been at Clayton a long time was sexually harassing him, and he asked whether he could be moved to a different department. Silva told Valdez that he *25 would discuss the matter further with Valdez after lunch, but Silva never talked to Valdez again about the matter or asked Valdez to submit a written complaint. Valdez was laid off on March 4, 1998.
In addition, Valdez submitted deposition testimony from Silva, who stated that Clayton's internal sexual harassment policy required the filing of a written complaint. Silva denied receiving a complaint from Valdez. Silva also indicated that Alan Cluer, Clayton's vice-president and general manager, had final authority to terminate Valdez, and that Valdez was terminated due to a lack of work, and not due to his performance. Silva testified that he was given a list of employees to terminate, that this list was prepared by Robin Pope, another employee, who worked with departmental supervisors to isolate employees to be terminated, and that Metzler worked with Pope to prepare the list.
Finally, Valdez submitted other portions of his deposition testimony to clarify the excerpts cited by respondents. At his deposition, he initially testified that he thought that he had been terminated because he had complained about harassment, and he answered "No facts" only after respondents' counsel repeatedly asked for facts linking his complaint to his termination. He did not dispute that he had testified that he had "no knowledge" of the basis for the termination of the other employees.
In our view, Valdez's showing raises triable issues regarding causation and pretext. There is substantial evidence that Valdez complained to Gonzalez, Metzler, and Silva about Metzler's harassment, that Valdez requested a transfer away the person who was harassing him, that Silva did nothing about Valdez's request, and that Metzler selected Valdez for termination, despite Valdez's competent performance. Although Valdez did not name Metzler when he complained about harassment to Silva, Valdez's description of the harasser as a senior "higher up," coupled with his request to be transferred away from Metzler's department, was sufficient to direct Silva to the harasser's identity. On this record, a reasonable jury could infer that Metzler and Clayton terminated Valdez in retaliation for his complaints, and not because there was an absence of work.
Citing primarily Addy v. Bliss & Glennon (1996) 44 Cal.App.4th 205, 51 Cal. Rptr.2d 642, respondents disagree, pointing to Valdez's statement that he had "no facts" linking his complaint with his termination, his statement that he had no knowledge that he was treated differently from the other terminated employees, and his testimony that Metzler's harassment affected his performance. However, Addy is factually distinguishable. In Addy, an employee claimed that she suffered discrimination in promotion after she filed a complaint with the Equal Employment Opportunity Commission. (Id. at pp. 210-212, 51 Cal.Rptr.2d 642.) The Addy court affirmed summary judgment on her claims because she was unable to show the causal element of a prima facie case or the existence of pretext, reasoning that the record indicated only that her employer had acted with legitimate business reasons and had treated her equally with other employees. (Id. at p. 217, 51 Cal.Rptr.2d 642.)
By contrast with Addy, there is ample evidence supporting the inference that Metzler harassed Valdez, that Valdez complained to Metzler and Clayton about this conduct, and that Metzler and Clayton terminated Valdez as a result of these complaints, and not as a result of his performance or the absence of work. Moreover, the statements from Valdez's deposition upon which respondents rely, when viewed in the context of his other deposition testimony, are fully reconcilable with this inference, *26 and thus they cannot be regarded as conclusive admissions for the purposes of summary judgment. (See Prilliman v. United Air Lines, Inc. (1997) 53 Cal. App.4th 935, 961-963, 62 Cal.Rptr.2d 142.)[2]
In sum, there are triable issues regarding the causal link necessary for a prima facie case of retaliation and the existence of pretext.

D. Statute Of Limitations

Finally, respondents sought summary adjudication on Valdez's allegations of sexual harassment, contending that they were time-barred.
Generally, a party may not bring a cause of action under FEHA without having filed a complaint with the California Department of Fair Employment and Housing (DFEH) within one year after the date of the alleged unlawful act. (§ 12960.) Nonetheless, when there is a systematic policy or pattern of discrimination, an equitable exception to the one-year period known as the "continuing violation doctrine" is applicable. (Accardi v. Superior Court, supra, 17 Cal.App.4th at p. 349, 21 Cal.Rptr.2d 292.) Under this doctrine, "a complaint arising under FEHA is timely if any of the discriminatory practices continues into the limitations *27 period. [Citations.]" (Ibid.) Although for some purposes FEHA treats harassment claims differently from discrimination claims, including retaliatory termination claims (Janken v. GM Hughes Electronics, supra, 46 Cal.App.4th at pp. 62-65, 53 Cal.Rptr.2d 741), harassment is a "discriminatory practice" within the meaning of the continuing violation doctrine. (Accardi v. Superior Court, supra, 17 Cal.App.4th at pp. 349-351, 21 Cal.Rptr.2d 292.)
Here, the parties do not dispute that Valdez filed his administrative complaints alleging sexual harassment and retaliatory termination on February 26, 1999, slightly less than one year after he was terminated on March 4, 1998, and that his allegations of retaliatory termination are not timebarred. Instead, Clayton and Metzler contend that the last act of harassment to which Valdez testified occurred on February 25, 1998, and thus his allegations of sexual harassment fall outside the one-year period.
The key issue posed here is whether the continuing violation doctrine applies to a claim for sexual harassment when, as alleged here, there has been a sequence of discriminatory incidents involving sexual harassment outside the one-year limit, but the only discriminatory incident within the one-year limit is a termination resulting from complaints about the sexual harassment. Because no California state court has addressed this issue, we look to federal case law, the source of the doctrine (Watson v. Department of Rehabilitation (1989) 212 Cal.App.3d 1271, 1290-1291, 261 Cal. Rptr. 204).
We discern guidance on this issue in Fielder v. UAL Corp. (9th Cir.2000) 218 F.3d 973. In Fielder, an airline sought summary judgment on a female employee's claims of sexual discrimination, retaliation, and constructive termination, contending that her claims were time-barred pursuant to 300-day limitations period governing title VII actions. (Id. at pp. 976-977.)
In opposition to summary judgment, the employee submitted evidence that she was sexually harassed by a male coemployee beginning in 1991. (Fielder v. UAL Corp., supra, 218 F.3d at p. 977.) In 1993, she complained to her supervisor, who did little to prevent the harassment, and who permitted the male coemployee to stir resentment against her among other employees. (Id. at pp. 979-980.) The female coemployee was subject to hostile acts from supervisors, including oral harangues, and received undesirable worker assignments. (Ibid.) As a result, she requested a transfer and went on extended medical leave on April 20,1994. (Id. at pp. 980-981.) In September 1994, while she was still on medical leave, she returned briefly to the airport to escort her mother onto an airplane, and was told by a supervisor that her appearance showed poor judgment. (Id. at p. 981.) Finally, in the fall of 1994, the airline denied her request for a transfer and instead transferred another employee with less seniority. (Id. at p. 982.) She filed an administrative complaint on May 9, 1995. (Id. at p. 983.)
On this showing, the district court concluded that the employee's claims for discrimination and retaliation were timebarred, and granted summary judgment. (Fielder v. UAL Corp., supra, 218 F.3d at p. 977.) The Ninth Circuit reversed, holding that there were triable issues regarding the application of the continuing violation doctrine. (Id. at p. 988.) The Ninth Circuit observed that a party can satisfy this doctrine by showing "a series of related acts, one or more of which falls within the limitations period'" provided that the acts within the period "were part of an ongoing unlawful employment practice." (Id. at p. 983, quoting Green v. Los Angeles *28 Cty. Superintendent of Sch. (9th Cir. 1989) 883 F.2d 1472, 1480.)
Concluding that the employee had raised triable issues regarding environmental sexual harassment in her workplace, the Ninth Circuit examined whether the two acts that the employee had alleged within the 300-day period, namely, the reprimand for escorting her mother and the denial of a transfer, were sufficiently related to her allegations of a hostile workplace to establish a continuing violation. (Fielder v. UAL Corp., supra, 218 F.3d at p. 985.) The key determination here was whether the acts within the limitations period "involve the same type of discrimination as those committed before the period," (id. at p. 986) that is, "whether there is a common type of discrimination, such as sexual or gender-based harassment, or if there is a common kind of employment action, such as repeated denial of a promotion." (Ibid.) The Ninth Circuit clarified that "[e]very incident of discrimination before the limitations period need not be of the same type, so long as there is a corresponding type of discrimination within the period." (Ibid.)
Applying this test, the Ninth Circuit determined that a reasonable jury could view the reprimand and denial of a transfer as akin to the acts of retaliation and failure to rectify the hostile environment that the employee had suffered before the limitations period. (Fielder v. UAL Corp., supra, 218 F.3d. at pp. 986-987.) Regarding the reprimand, there were triable issues as to whether it was akin to retaliatory acts by supervisors prior to the limitation period, including the harangues. (Ibid.) Regarding the denial of the transfer, there were triable issues as to whether it was akin to the failures to rectify the hostile environment prior to the limitation period. (Id. at p. 987.)
In making this determination, the Ninth Circuit rejected a test stated in Berry v. Board of Sup'rs of L.S.U. (5th Cir.1983) 715 F.2d 971, 981. In Berry, a case involving claims that a female had been denied equal pay and working conditions on the basis of her gender, the court set forth a test to differentiate continuing violations from "discrete, isolated, and completed acts which must be regarded as individual violations." (Id. at pp. 973, 981.) Under the Berry test, the inquiry involves an assessment of the facts of the case, with attention to (1) whether the alleged acts involve the same type of discrimination, (2) the frequency of the acts, and (3) whether the acts were of sufficient permanence to place the employee on notice that his or her rights have been violated. (Id. at p. 981.) The court in Berry placed special emphasis on factor (3) as a basis for determining whether an act constituted a discrete violation, rather than an element of a continuing pattern. (Ibid.) The court in Fielder declined to apply the Berry test, reasoning that it was not "properly suited for a hostile work environment." (Fielder v. UAL Corp., supra, 218 F.3d at p. 987.)
We find Fielder persuasive on the issue before us, and under it, we conclude that there are triable issues regarding a continuing violation. As the court explained in Flait v. North American Watch Corp., supra, 3 Cal.App.4th at page 476, 4 Cal.Rptr.2d 522, the harassment provision of section 12940 "requir[es] that supervisors `take immediate and appropriate corrective action' when harassment is brought to their attention." (Original emphasis.) Here, Valdez submitted evidence that Metzler harassed Valdez, and repeatedly failed to discharge his duty as supervisor under the harassment provision to halt the harassment. Valdez's evidence indicates that prior to the limitations period, Metzler, his supervisor, harassed him, *29 and refused to stop when Valdez complained to him. Moreover, Valdez submitted evidence that after he asked Silva whether he could be transferred, Metzler selected him for termination.
In view of this evidence, a reasonable juror could conclude that Metzler's participation in Valdez's termination breached the harassment provision of section 12940, as well as retaliatory termination provision of section 12940: rather than end the harassment, Metzler contrived to end Valdez's employment. Under Fielder, there are triable issues as to whether Valdez's dismissal was sufficiently akin to the failures to rectify the hostile environment prior to the limitations period. (See also Morgan v. National Railroad Passenger Corp. (9th Cir.2000) 232 F.3d 1008, 1016-1017 [triable issues exist regarding whether plaintiffs retaliatory discharge is element of continuous violation beginning with harassment and discrimination].)
In addition, Valdez submitted evidence that prior to the limitations period, Metzler harangued Valdez for complaining about sexual harassment and compelled Valdez to acknowledge that Metzler was his "boss." Under Fielder, there are triable issues as to whether Clayton's and Metzler's termination of Valdez due to his complaints about sexual harassment were sufficiently akin to this harangue, viewed as an act of retaliation.
Accordingly, there are triable issues regarding whether sexual harassment and retaliation continued into the limitations period. Respondents doggedly disagree, citing several federal cases. However, in view of the careful analysis in Fielder, these cases are not persuasive. Most of these cases rely, directly or indirectly, on Berry, which the Ninth Circuit rejected in Fielder. (Huckabay v. Moore (5th Cir. 1998) 142 F.3d 233, 239-240; Bolt v. Norfolk Southern Corp. (E.D.Va.1997) 22 F.Supp.2d 512, 516-517; Detrick v. H & E Machinery, Inc. (W.D.N.Y.1996) 934 F.Supp. 63, 67-68; Kwatowski v. Runyon (D.Mass.1996) 917 F.Supp. 877, 886.) The remainder conclude with little or no discussion that a termination following harassment cannot constitute a continuing violation. (White v. Arab Banking Corp. (S.D.N.Y. Apr. 22, 1996) No. 93 Civ. 5335(LMM), 1996 WL 191727,*9, 1996 U.S. Dist. Lexis 5221, *20; Van Zant v. KLM Royal Dutch Airlines (S.D.N.Y.1994) 870 F.Supp. 572, 575; Brookes v. The Museum of Natural History (S.D.N.Y. Sept. 5, 1991) No. 91 Civ. 2870(CBM), 1991 WL 177647, *2, 1991 U.S. Dist. Lexis 12250, *5.)
In sum, triable issues exist regarding the existence of a continuing violation.

DISPOSITION
The judgment is reversed. Appellant is awarded his costs.
EPSTEIN, Acting P.J., and HASTINGS, J., concur.
NOTES
[1] All further statutory references are to the Government Code unless otherwise indicated.
[2] For the same reasons, we also regard as factually distinguishable the recent decisions in Morgan v. Regents of the University of California (2000) 88 Cal.App.4th 52, 105 Cal. Rptr.2d 652 and Clark County School District v. Breeden (2001) 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509, which respondents have cited in letter briefs submitted after the completion of briefing.

In Morgan, the plaintiff was laid off, and he filed an administrative complaint alleging that his layoff was due to racial discrimination. (88 Cal.App.4th at p. 57, 105 Cal.Rptr.2d 652.) After an arbitrator found that legitimate business reasons motivated the layoff, the plaintiff unsuccessfully applied to be rehired, and he filed an employment discrimination action. (Id. at p. 58, 105 Cal.Rptr.2d 652.) The Morgan court held that summary judgment was proper on his discrimination claims, reasoning, inter alia, that there were no triable issues regarding pretext because there was no evidence that the plaintiff was qualified for the positions that he had sought or that the decision makers who denied his applications for renewed employment knew of his prior discrimination complaint. (Id. at pp. 72-80, 105 Cal.Rptr.2d 652.)
In Clark County School District, the plaintiff alleged that she had been harassed, and that her employer had transferred her in retaliation for filing her subsequent administrative complaint and civil action. (532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509.) Her only evidence that her complaints were causally responsible for her transfer was that she had filed her administrative complaint two years before the transfer, and that she had received a right-to-file letter three months before the transfer. (532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509.) The court in Clark County School District held that this evidence did not establish the causal element of a prima facie case of retaliation, reasoning that there was no evidence that the decision maker who ordered the transfer knew of the right-to-sue letter or the administrative complaint, and even if the decision maker was aware of this complaint, the two-year gap between its filing and the transfer nullified the inference of a causal connection. (Ibid.)
By contrast with Morgan and Clark County School District, there is evidence here that (1) Valdez repeatedly complained about Metzler's harassment to his supervisors, including Metzler, (2) shortly before Valdez's termination, he complained to Silva about the harassment in sufficient detail to permit Silva to identify Metzler as the perpetrator, (3) Metzler played a role in selecting Valdez for termination, and (4) Silva was aware of Metzler's role. This evidence raises the reasonable inference that Metzler and Clayton knew of Valdez's complaints and retaliated against Valdez for making them. (Cf. Clark v. Claremont University Center (1992) 6 Cal.App.4th 639, 669, 8 Cal. Rptr.2d 151 [evidence of discriminatory remarks by persons in lower levels of interconnected decisionmaking process raises inference that discrimination infected ultimate employment decision].)