Filed 3/26/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BRIAN LEWIS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF BENICIA, <br><br> Defendant and Respondent. | A134078 <br><br> (Solano County <br> Super. Ct. No. FCS034334) |
| BRIAN LEWIS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> RICK LANTRIP et al., <br><br> Defendants and Respondents. | A134114 <br><br> (Solano County <br> Super. Ct. No. FCS034334) |

Plaintiff Brian Lewis, a heterosexual man, sued his former employer, the City of Benicia (City), and two former supervisors, Steve Hickman and Rick Lantrip, asserting claims under California's Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.)[1] for sexual harassment and (as to City) retaliation. The trial court granted summary judgment in favor of Hickman and Lantrip, and judgment on the pleadings for City as to the sexual harassment claims. City prevailed at trial on the retaliation claim. On appeal, Lewis challenges the grants of summary judgment and judgment on the pleadings, and argues evidentiary and other errors require reversal as to retaliation. We reverse the summary judgment as to Hickman, affirm summary judgment as to Lantrip, and reverse the judgment on the pleadings for City. As to retaliation, we

---

[1] All statutory references are to the Government Code unless otherwise stated.

conclude the court prejudicially erred in excluding certain evidence at trial, and we reverse the judgment for City on the retaliation claim.

## I. BACKGROUND[2]

Lewis worked at City's water treatment plant, first as a volunteer (beginning in March 2008), then as a paid intern for a 60-day internship (from July to October 2008), and finally for a second stint as a volunteer (from January to May 2009). As we discuss in more detail in parts II.A and II.B below, Lewis alleges Hickman (who was Lewis's supervisor during his first volunteer period and most of his paid internship) and Lantrip (who was Lewis's supervisor during the last few weeks of his paid internship and during his second volunteer period) sexually harassed Lewis. Lewis alleges City retaliated against him for complaining about the harassment and for participating in an investigation of Hickman that resulted in Hickman's retiring in lieu of termination.

Lewis's complaint asserts causes of action against City, Hickman and Lantrip for sexual harassment, intentional infliction of emotional distress, and failure to prevent sexual harassment, and a cause of action against City for retaliation. The trial court granted summary judgment for Hickman and Lantrip. The court later granted City's motion for judgment on the pleadings as to sexual harassment, intentional infliction of emotional distress, and failure to prevent sexual harassment.

At the conclusion of the trial on the retaliation claim, the jury returned a special verdict, finding (1) Lewis participated in protected activity, (2) City engaged in conduct that materially and adversely affected the terms and conditions of Lewis's employment, and (3) Lewis's participation in protected activity was a motivating reason for City's adverse actions, but (4) City's conduct was not a substantial factor in causing harm to

---

[2] We provide additional background facts in the sections of this opinion addressing the parties' arguments on appeal.

2

Lewis. The court entered judgment for City, and later entered judgments for Hickman and Lantrip.

We consolidated, for purposes of oral argument and decision, Lewis's appeals of (1) the judgment in favor of City (No. A134078), and (2) the judgments in favor of Hickman and Lantrip (No. A134114).

## II. DISCUSSION

### A. Summary Judgment for Hickman

Lewis contends the trial court erred in granting summary adjudication on his sexual harassment cause of action against Hickman.[3] We conclude triable issues of material fact preclude summary adjudication of that claim.

#### 1. Standard of Review

"The rules of review are well established. If no triable issue as to any material fact exists, the defendant is entitled to a judgment as a matter of law. [Citations.] In ruling on the motion, the court must view the evidence in the light most favorable to the opposing party. [Citation.] We review the record and the determination of the trial court de novo."[4] (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499; accord, *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.)

---

[3] Lewis does not argue on appeal that the court erred in granting summary adjudication as to his causes of action against Hickman for intentional infliction of emotional distress and failure to prevent sexual harassment. We therefore affirm the summary adjudication of those causes of action. (See *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [trial court's judgment is presumed to be correct, and appellant has burden to overcome presumption by demonstrating reversible error].)

[4] In reviewing the trial court's rulings on Hickman's and Lantrip's summary judgment motions, we consider only the evidence submitted to the trial court with the parties' summary judgment papers. We do not consider evidence presented at the subsequent trial or in connection with other proceedings in the case.

## 2. Sexual Harassment Under FEHA

FEHA's "prohibition against sexual harassment includes protection from a broad range of conduct, ranging from expressly or impliedly conditioning employment benefits on submission to or tolerance of unwelcome sexual advances, to the creation of a work environment that is hostile or abusive on the basis of sex." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 461 (*Miller*).) A hostile work environment sexual harassment claim requires a plaintiff employee to show: (1) he or she was subjected to unwelcome sexual advances, conduct or comments; (2) the harassment was based on sex; and (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279 (*Lyle*); *Kelley v. The Conco Companies* (2011) 196 Cal.App.4th 191, 202-203 (*Kelley*).) Under FEHA, an employee who harasses another employee may be held personally liable. (§ 12940, subd. (j)(3) ["An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action."]; see *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 471.)

Lewis contends the trial court erred in ruling Hickman's alleged conduct did not constitute harassment because of Lewis's sex, and in ruling the conduct was not severe or pervasive enough to create a hostile work environment actionable under FEHA.[5]

---

[5] As noted, Lewis was a volunteer for part of the period when Hickman was his supervisor. Unlike Lantrip (see part II.B below), Hickman did not argue in his summary judgment motion, and does not argue on appeal, that Lewis was only entitled to FEHA's protections when he was a paid intern. Accordingly, we do not address that issue in connection with Lewis's appeal of the judgment in favor of Hickman.

4

### 3. Harassment Because of Sex

To prove sexual harassment, a plaintiff must show he or she suffered discrimination because of sex. (*Lyle, supra,* 38 Cal.4th at pp. 279-280; *Kelley, supra,* 196 Cal.App.4th at p. 203.) " ' "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." ' [Citations.]" (*Lyle, supra*, 38 Cal.4th at pp. 279-280, quoting *Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 80 (*Oncale*).)[6] A FEHA plaintiff must show " ' "that gender is a substantial factor in the discrimination, and that if the plaintiff 'had been a man she would not have been treated in the same manner.' " [Citation.]' [Citations.] Accordingly, it is the disparate treatment of an employee on the basis of sex . . . that is the essence of a sexual harassment claim." (*Lyle, supra,* 38 Cal.4th at p. 280.) "Because proof of discriminatory intent often depends on inferences rather than on direct evidence, very little evidence of such intent is necessary to defeat summary judgment." (*Kelley, supra,* 196 Cal.App.4th at p. 203.)

Under both Title VII and FEHA, sexual harassment can occur between members of the same gender as long as the plaintiff can establish the harassment amounted to discrimination *because of sex*. (*Oncale, supra,* 523 U.S. at pp. 79-80; *Kelley, supra,* 196 Cal.App.4th at p. 203; *Singleton v. U.S. Gypsum Co.* (2006) 140 Cal.App.4th 1547, 1557 (*Singleton*); *Mogilefsky v. Superior Court* (1993) 20 Cal.App.4th 1409, 1416-1418 (*Mogilefsky*).)

---

[6] Although the wording of Title VII of the federal Civil Rights Act of 1964 (Title VII; 42 U.S.C. § 2000e et seq.) and FEHA differs in some respects, both statutes treat the prohibition against sexual harassment as part of the proscription against sexual discrimination, and the statutes have identical antidiscriminatory objectives. (*Lyle, supra*, 38 Cal.4th at p. 278.) Accordingly, "California courts frequently seek guidance from Title VII decisions when interpreting the FEHA and its prohibitions against sexual harassment." (*Ibid.,* citing *Miller, supra,* 36 Cal.4th at p. 463.) In particular, for hostile work environment claims, California courts apply standards developed under Title VII. (*Lyle,* 38 Cal.4th at pp. 278-279.)

In *Oncale*, the Supreme Court discussed alternative "evidentiary route[s]" that could support an inference that same-gender harassment was discrimination because of sex. (*Oncale, supra,* 523 U.S. at pp. 80-81; see *Kelley, supra,* 196 Cal.App.4th at p. 204.) The Court first noted an inference of discrimination may be "easy to draw" in male-female sexual harassment situations involving "explicit or implicit proposals of sexual activity," and "[t]he same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual." (*Oncale, supra,* 523 U.S. at p. 80.) The Court stated, however, that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex" (*ibid.*), and the Court suggested other potential methods to establish the inference of discrimination. "A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." (*Id.* at pp. 80-81.) These are not necessarily the exclusive means of establishing the inference. (*Kelley, supra,* 196 Cal.App.4th at p. 205; see also *Singleton, supra,* 140 Cal.App.4th at p. 1562.) But the *Oncale* Court emphasized that, "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimination* . . . because of . . . sex.'" (*Oncale, supra,* 523 U.S. at p. 81.)

We conclude that, applying the first evidentiary route outlined by the Supreme Court in *Oncale*, the evidence in the present case allows an inference Hickman's conduct toward Lewis constituted discrimination because of sex. Preliminarily, we note California appellate courts have disagreed as to the evidentiary showing needed to support an inference that same-gender harassment constitutes discrimination on the basis

6

of sex. In *Singleton* and *Mogilefsky* (cited by Lewis), our colleagues in the Second District (Divisions Eight and Four, respectively) concluded same-gender harassment consisting of sexual comments designed to humiliate the plaintiff and challenge his gender identity constitutes harassment because of sex within the meaning of FEHA. (See *Singleton, supra,* 140 Cal.App.4th at pp. 1561-1562, 1564; *Mogilefsky, supra,* 20 Cal.App.4th at pp. 1412, 1415-1416, 1418.) In these circumstances, the *Singleton* and *Mogilefsky* courts held a plaintiff need not prove the alleged harasser was motivated by sexual interest. (*Singleton, supra,* 140 Cal.App.4th at p. 1564; *Mogilefsky, supra,* 20 Cal.App.4th at pp. 1415-1416, 1418.) In *Kelley* (cited by Hickman), our colleagues in Division Five of this court disagreed with *Singleton,* holding a harasser's sexual comments and propositions cannot support an inference of discrimination based on sex unless the plaintiff presents evidence the alleged harasser was acting from genuine sexual interest.[7] (*Kelley, supra,* 196 Cal.App.4th at pp. 205-207; see *Dick v. Phone Directories Co., Inc.* (10th Cir. 2005) 397 F.3d 1256, 1264-1265 [plaintiff must show harassing conduct was motivated by sexual desire, but need not present testimony the harasser was homosexual].) We need not determine whether a same-gender sexual harassment claim based on sexual propositions or comments is viable in the absence of evidence the harasser was motivated by sexual interest, because the evidence in the present case allows an inference Hickman was motivated by sexual interest.[8]

---

[7] In the recent decision in *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1239, the court (the Second District, Division Six) agreed with *Singleton* and disagreed with *Kelley*.

[8] A recent legislative amendment modifies section 12940, subdivision (j)(4)(C) (a provision of FEHA specifying types of conduct that constitute harassment because of sex) to read: "For purposes of this subdivision, 'harassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions. *Sexually harassing conduct need not be motivated by sexual desire*." (See § 12940, subd. (j)(4)(C), as amended by Stats. 2013, ch. 88, § 1, italics added to show text added by amendment.) To resolve the present appeal, we need not

Some of Hickman's alleged acts had sexual connotations. Lewis testified Hickman showed Lewis images on Hickman's office computer that included a video of a penis in a rat trap and an image of a woman with lopsided breasts.[9] Hickman told Lewis "risqué" jokes, including: " 'How do you make your wife moan then scream? You fuck her in the ass and then you wipe it on your drapes.' "

Moreover, Hickman's alleged course of conduct allows an inference he was pursuing a romantic or sexual relationship with Lewis. Lewis testified Hickman gave him about 30 different items as gifts during the time he worked at the water treatment plant. The gifts included "tuxedo underwear," with ruffles and a bow tie. Hickman also gave Lewis hats, T-shirts, wine, shot glasses and backpacks. Hickman frequently bought lunch for Lewis. On one occasion during a break, when Lewis picked up Hickman's cigarette, Hickman said: "[W]hy don't you just kiss me[?]" Hickman once said Lewis should visit his home.

Based on the above evidence, a reasonable jury could conclude Hickman engaged in "sexual advances, conduct, or comments" (see *Lyle, supra,* 38 Cal.4th at p. 279), and acted from "genuine sexual interest" (see *Kelley, supra,* 196 Cal.App.4th at p. 205). Accordingly, triable issues of material fact exist as to whether Hickman's alleged harassment of Lewis was based on sex.

Hickman, relying on *Kelley*, argues his alleged conduct did not constitute harassment based on sex. *Kelley* is distinguishable. In that case, a male apprentice ironworker was subjected to sexually demeaning comments and gestures by a male supervisor and male coworkers on the same date. (*Kelley*, *supra*, 196 CalApp.4th at

address the effect of this amendment, because, even if evidence of sexual desire is necessary, triable issues of material fact preclude summary adjudication.

[9] Lewis also testified he saw, through the glass window of Hickman's office, an image on Hickman's computer of a man's penis going into another man's mouth. Hickman did not believe anyone could see his computer screen from outside his office, because he had tried to set it up so no one could see it.

pp. 197–199, 205, 207.) The appellate court held that, although the "literal statements expressed sexual interest and solicited sexual activity," the plaintiff could not recover under FEHA because there was "no 'credible evidence that the harasser was homosexual' or that the harassment was 'motivated by sexual desire.' " (*Id.* at p. 205.) Here, in contrast, Hickman's alleged conduct did not consist of an isolated outburst of profane insults. Instead, as outlined above, Hickman allegedly engaged in a course of conduct from which a reasonable jury could infer he was pursuing a relationship with Lewis and was acting from genuine sexual interest.

Hickman argues his alleged conduct was innocuous. He contends that, by telling jokes with sexual connotations and by showing the computer images to Lewis, he engaged in "mere banter among male co-workers." Lewis testified he probably laughed at the joke mentioned above, and he might have told Hickman "risqué" jokes as well. As to his other alleged conduct, Hickman argues he just gave Lewis "the extra attention that is often given to interns, such as free lunches, small gifts and letters of recommendation."[10] Hickman testified he gave wine and other gifts to other employees (not just to Lewis), and Lewis did not decline or object to receiving Hickman's gifts (although Lewis testified he did not want or use them). As to the lunch purchases, Hickman testified he offered to buy lunch for Lewis if Lewis picked up Hickman's lunch from a nearby taco stand; Hickman also told Lewis he was buying lunch to show his appreciation for the work Lewis was doing. We acknowledge some of this evidence is potentially supportive of Hickman's position. But, viewing the evidence in the light most favorable to Lewis (see *Shin v. Ahn, supra,* 42 Cal.4th at p. 499), and for the reasons discussed above, we conclude a reasonable jury could find Hickman's conduct constituted harassment because of sex.

---

[10] Hickman gave Lewis a letter of recommendation. Lewis testified it was unsolicited.

### 4.     Pervasive Conduct

The trial court concluded, and Hickman argues on appeal, that Hickman's alleged conduct was not sufficiently severe or pervasive to support a cause of action for sexual harassment. "[T]o prevail, an employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex. (See *Aguilar v. Avis Rent A Car System, Inc.* [(1999) 21 Cal.4th 121, 130], relying upon *Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21.)  The working environment must be evaluated in light of the totality of the circumstances:  '[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'  (*Harris v. Forklift Systems, Inc., supra,* 510 U.S. at p. 23.)"  (*Miller, supra,* 36 Cal.4th at p. 462.)

Based on the course of alleged conduct summarized above, which included numerous gifts and frequent lunch purchases, along with some sexual jokes and displays of pornographic computer images, over a period of several months, a reasonable jury could conclude Hickman engaged in a pervasive pattern of harassing conduct.

Hickman argues Lewis cannot establish this element of his sexual harassment cause of action because Lewis did not object to Hickman's conduct (such as by refusing his gifts or lunch purchases), which consisted only of isolated incidents and did not affect Lewis's work performance.  We are not persuaded Hickman is entitled to judgment as a matter of law.  The apparent frequency and regularity of some of the alleged conduct, such as the gifts and lunch purchases, allows an inference Hickman engaged in a pervasive pattern of conduct, rather than a few isolated acts.  Further, Lewis testified he felt uncomfortable when Hickman showed him pornographic images on his computer and

10

asked him to stop on one occasion;[11] Lewis also testified the gifts he received from Hickman were unwelcome, and he has not used them. Finally, whether Hickman's alleged conduct unreasonably interfered with Lewis's work performance is a relevant factor in determining whether a hostile work environment existed, but no single factor is required. (See *Harris v. Forklift Systems, Inc., supra,* 510 U.S. at p. 23; accord, *Miller, supra,* 36 Cal.4th at p. 462.)

For the foregoing reasons, we conclude triable issues of material fact preclude summary adjudication of Lewis's sexual harassment cause of action against Hickman.

## B. Summary Judgment for Lantrip

Lewis contends the trial court erred in concluding no triable issues of material fact existed as to whether Lantrip, while serving as Lewis's supervisor, sexually harassed Lewis.[12] We disagree, and we affirm the judgment in favor of Lantrip.

Lewis testified that, sometimes in the morning before work, Lantrip displayed pornographic images on the work computer belonging to secretary Cindy Hirakawa, and Lantrip called Lewis and others over to look at them. Lewis testified Lantrip pointed out the images to everyone who was in the "general vicinity." The images included "breasts

---

[11] Although we do not consider this evidence in concluding there are triable issues of material fact, we note the City of Benicia, after being notified by the union steward about supervisor Hickman's behavior towards appellant and others, retained a third-party investigator, Debra Estrin. Her firm was retained to investigate the allegations. At the completion of her review, she submitted a detailed report. In summary, she determined "[b]ased on all of the above, Mr. Hickman has violated the City's policy on Electronic Media Access, Unlawful Harassment and Discrimination, and Benicia Personnel Rule 9.2, Sections L, M, N, [and] O." The report also states appellant Lewis was "extremely believable . . . . [He] does not have a motive to lie, since he is only at the plant for a limited period of time. It would be unreasonable for him to lie . . . ." As a result of the Estrin investigation, respondent Hickman was given a notice of termination, but was allowed to retire in place of termination.

[12] Lewis does not contend the court erred in concluding no triable issues existed as to his causes of action against Lantrip for intentional infliction of emotional distress and failure to prevent sexual harassment.

11

and nudity" and inappropriate jokes. Lewis testified he was free to leave and not look at the images, but felt he had to look to fit in. This occurred two or three times while Lantrip was Lewis's supervisor (and about 15 times while Lantrip was a maintenance worker, before he was promoted to supervisor).[13] Lewis also testified Lantrip told "obscene" jokes at work (sometimes in the morning before work and sometimes in the break room in the afternoon), although Lewis could not remember any of the jokes. Lewis alleged in his complaint that Lantrip sent emails with sexual or pornographic content, but Lewis testified in his deposition that Lantrip never sent such an email to Lewis during the time Lewis worked for City.[14] Lewis also testified Lantrip frequently massaged or rubbed the shoulders of secretary Cindy Hirakawa in the presence of other employees; Lantrip also touched Hirakawa's arms, hair and hands.[15] Lewis testified Lantrip did not sexually harass him while he was volunteering at the water treatment plant and Lantrip was his supervisor.

We agree with the trial court that the above evidence reveals no triable issues of material fact as to whether Lantrip sexually harassed Lewis. There is no basis for a reasonable trier of fact to conclude Lantrip harassed Lewis on the basis of sex, or subjected Lewis to a pervasive pattern of harassing conduct. In contrast to the evidence pertaining to Hickman (such as his frequent gifts and lunch purchases, as well as his suggestive comments directed specifically to Lewis), there is no evidence Lantrip

---

[13] In his complaint and on appeal, Lewis alleges Lantrip engaged in sexual harassment while he was Lewis's supervisor.

[14] Lewis testified that, in August 2009, when Lewis was no longer working for City, Lantrip sent to Lewis's father an email containing inappropriate jokes. Lewis forwarded the email from his father's email account to himself.

[15] In a report issued in September 2009 (when Lewis was no longer working at the water treatment plant), an outside investigator concluded Lantrip violated City policies by sending an inappropriate email, possessing and displaying inappropriate video clips, and massaging Hirakawa. The investigator did not interview Lewis or make any findings as to any conduct by Lantrip toward Lewis.

12

pursued a romantic or sexual relationship with Lewis, made any explicit or implicit proposals of sexual activity, or acted from genuine sexual interest in Lewis. (See *Oncale, supra,* 523 U.S. at pp. 80-81; *Kelley, supra,* 196 Cal.App.4th at pp. 204-205.)

Moreover, contrary to Lewis's suggestion, there also is no evidence supporting the theory of liability approved in *Singleton* (but rejected in *Kelley*), i.e., that Lantrip harassed Lewis by attacking his sexual identity as a heterosexual male.[16] (See *Singleton, supra,* 140 Cal.App.4th at pp. 1561-1562, 1564; *Kelley, supra,* 196 Cal.App.4th at pp. 205-207.) In *Singleton,* the plaintiff's coworkers allegedly made sexually explicit, demeaning and taunting comments to the plaintiff on a regular basis. (*Singleton, supra,* 140 Cal.App.4th at pp. 1552-1553; see also *Taylor v. Nabors Drilling USA, LP, supra,* 222 Cal.App.4th at pp. 1233-1235 [describing similarly egregious conduct].) There is no evidence of any similar conduct here. Instead, as noted above, Lantrip allegedly displayed (on two or three occasions while he was supervisor) pornographic computer images to a group of employees that included Lewis, and told jokes that Lewis cannot recall.

Lewis contends that, under the California Supreme Court's decision in *Miller*, Lantrip's massaging or touching of Hirakawa provides a basis for Lewis's sexual harassment cause of action against Lantrip. We disagree. In *Miller*, a male prison warden granted unwarranted and unfair employment benefits to three female subordinates with whom he was having concurrent sexual affairs. (*Miller*, *supra*, 36 Cal.4th at pp. 450, 452-459, 466.) The plaintiffs, two other female employees, presented evidence that advancement for women at the prison was based on sexual favors rather than merit, as the warden repeatedly promoted the women with whom he was having affairs to

---

[16] Because there are no triable issues of fact as to either (1) the theory of liability outlined in *Singleton* and relied on by Lewis, or (2) genuine sexual interest as required by *Kelley*, we need not address the effect of the legislative amendment to section 12940, subdivision (j)(4)(C) (discussed in part II.A above).

positions for which they were not qualified, and in preference to more qualified candidates. (*Id.* at pp. 451, 466-467.) In addition, the warden apparently gave one of the women the power to abuse other employees who complained about the affairs. (*Id.* at p. 466.) The *Miller* Court held that "when such sexual favoritism in a workplace is sufficiently widespread it may create an actionable hostile work environment in which the demeaning message is conveyed to female employees that they are viewed by management as 'sexual playthings' or that the way required for women to get ahead in the workplace is to engage in sexual conduct with their supervisors or the management." (*Miller, supra,* 36 Cal.4th at p. 451.) The *Miller* Court stated such a demeaning atmosphere may be actionable by both men and women. (*Id.* at pp. 464, 470.)

The plaintiffs in *Miller* had viable claims because they "alleged far more than that a supervisor engaged in an isolated workplace sexual affair and accorded special benefits to a sexual partner. They proffered evidence demonstrating the effect of widespread favoritism on the work environment, namely the creation of an atmosphere that was demeaning to women." (*Miller, supra,* 36 Cal.4th at p. 470.) Here, in contrast, Lewis has not shown Lantrip was having a sexual affair with Hirakawa or granted her unwarranted or unfair employment benefits. Lewis also has presented no evidence of the type of widespread sexual favoritism and the resulting impact on the work environment that were present in *Miller*.

Considering all of Lantrip's alleged conduct and all the relevant circumstances, we conclude no triable issues of fact exist as to Lewis's sexual harassment claim against Lantrip. We affirm the summary judgment for Lantrip.[17]

---

[17] Lantrip contended in his summary judgment motion, and argues on appeal, that Lewis was not an employee entitled to FEHA's protections during the periods of time he worked as a volunteer at the water treatment plant. Because there are no triable issues of material fact as to Lewis's sexual harassment cause of action against Lantrip, and Lantrip is entitled to summary judgment on that basis, we need not address this argument.

14

**C.     Judgment on the Pleadings for City**

**1.     Sexual Harassment and Failure to Prevent Sexual Harassment**

City argued, and the trial court ruled, that because Lewis had no viable sexual harassment claims against Hickman or Lantrip, City could have no liability for sexual harassment or failure to prevent sexual harassment.  Because we reverse the summary adjudication of Lewis's sexual harassment claim against Hickman, we reverse the grant of judgment on the pleadings for City on Lewis's causes of action for sexual harassment and failure to prevent sexual harassment.

**2.     Intentional Infliction of Emotional Distress**

The court granted judgment on the pleadings on Lewis's cause of action against City for intentional infliction of emotional distress, concluding (1) the alleged retaliatory conduct underlying this cause of action was "limited to 'personnel management decisions,' " and (2) the alleged harassing conduct underlying this cause of action "fail[ed] to reach the threshold level of outrageousness and severity."  In his opening brief on appeal, Lewis presents no argument as to why the court's grant of judgment on the pleadings on this cause of action was erroneous; in his reply brief he refers to this claim in passing.  By failing to present any argument about this cause of action in his opening brief, Lewis has forfeited any challenge to the court's ruling on this claim.  (See *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 84, fn. 5.)

**D.     Retaliation**

It is an unlawful employment practice under FEHA for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  (§ 12940, subd. (h).)  To establish retaliation, a plaintiff must prove he engaged in protected activity; the employer took an adverse employment action against him; the protected activity was a motivating reason

15

for the adverse action; and the employer's conduct caused harm to the plaintiff. (See *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 713 (*Mamou*); CACI No. 2505.)

Lewis alleges that, after he participated in the investigation of Hickman, City retaliated against him by terminating his paid internship in October 2008 and prohibiting him from continuing to work at the water treatment plant, even on an unpaid basis. Lewis also alleges that, after he returned for a second stint as a volunteer in January 2009, City engaged in other retaliatory acts, including falsely accusing Lewis of workplace misconduct, and providing false and incomplete information in connection with a workers' compensation claim Lewis submitted after he sustained an ankle injury at the plant.

At the conclusion of the trial, and after being instructed on the above elements, the jury found (1) Lewis participated in protected activity, (2) City engaged in conduct that materially and adversely affected the terms and conditions of Lewis's employment, and (3) Lewis's participation in protected activity was a motivating reason for City's adverse employment action, but (4) City's conduct was not a substantial factor in causing harm to Lewis.

Lewis appeals the resulting judgment in favor of City on the retaliation claim. He contends the trial court prejudicially erred by (1) excluding evidence of Hickman's alleged sexual harassment, (2) excluding a psychologist's expert testimony about emotional distress suffered by Lewis, (3) excluding expert testimony about Lewis's ankle injury, (4) excluding certain other evidence and permitting improper leading questions of certain witnesses, and (5) not instructing the jury, in response to a statement by City's counsel during closing argument, that FEHA applied to Lewis during the periods when he was a volunteer at the water treatment plant. We conclude Lewis's challenges to the exclusion of evidence of sexual harassment and the exclusion of expert psychological

16

testimony have merit, and we reverse the judgment on the retaliation claim on those grounds. We do not address Lewis's other claims of error.

### 1. Exclusion of Evidence of Sexual Harassment

#### a. Background

City moved in limine to exclude Lewis's oral testimony about images he saw on Hickman's computer, arguing Lewis had not produced copies of the images and the testimony would be unduly prejudicial. City also moved to exclude evidence of the gifts Hickman gave to Lewis, because Lewis had not produced the gifts in discovery.

The court, at a pretrial hearing, granted judgment on the pleadings for City on the sexual harassment claims. Later at that hearing, when the court turned to the motions in limine, counsel for City argued the court should exclude evidence of sexual harassment (apparently all such evidence, not just the categories of evidence that were the subjects of City's written motions in limine) because it was irrelevant to Lewis's sole remaining claim for retaliation and would be unduly prejudicial. Lewis's counsel contended such evidence was admissible and necessary to provide context for the retaliation claim. The court, relying on Evidence Code section 352, granted City's motions and ruled that, instead of permitting evidence about sexual harassment, it would read to the jury a detailed statement of the case "that would allow the jury to understand the general nature of what protected activities in violation of FEHA were involved and why that gives the jury a flavor of then why there would be retaliation." When City argued the statement should mention Lewis alleged a hostile work environment but should not say "it was sexual in nature," the court disagreed, stating: "No. I would. Absolutely. I would say all—I would say he alleged sexual harassment, a hostile work environment."

The court later sent a draft statement of the case to the parties. The draft statement did not mention Lewis complained of sexual harassment or a hostile work environment; the draft statement just stated generally that Lewis participated in investigations of his supervisors. Lewis objected to the court's draft statement and to the court's making any

17

statement at all, contending it would be an improper substitute for the presentation of evidence. The court sustained this objection and stated it would not read a detailed statement of the case to the jury.

### b. Analysis

"A motion in limine is made to exclude evidence before it is offered at trial on the ground that the evidence is either irrelevant or subject to discretionary exclusion as unduly prejudicial." (*Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1480–1481.) We review trial court rulings on in limine motions for abuse of discretion. (*Piedra v. Dugan* (2004) 123 Cal.App.4th 1483, 1493.)

As noted, when the court made its in limine rulings, it had just granted judgment on the pleadings for City on the sexual harassment claims. We have held (above) that the judgment on the pleadings on those claims must be reversed. We also conclude that, even in the context in which the court ruled on the in limine motions (i.e., when the only remaining claim was for retaliation), the court abused its discretion by excluding all evidence of Hickman's alleged sexually harassing conduct.

Such evidence was relevant to Lewis's retaliation claim.[18] (See Evid. Code, §§ 210, 350, 351.) As noted, to prove retaliation, Lewis had to show he engaged in protected activity (i.e., he "oppose[d] conduct" he "reasonably and in good faith believe[d] to be discriminatory" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043)); City took an adverse employment action against him because of the protected activity; and City's conduct caused harm to Lewis. (See *Mamou, supra,* 165 Cal.App.4th at p. 713; CACI No. 2505.) Evidence of Hickman's conduct was probative as to whether Lewis engaged in protected activity, because it was relevant to whether Lewis reasonably

---

[18] City notes that, under Code of Civil Procedure section 437c, subdivision (n)(1), at trial, a cause of action as to which summary adjudication has been granted shall be deemed established. But such adjudication does not bar the remaining causes of action (Code Civ. Proc., § 437c, subds. (n)(1)-(2)), and evidence relevant to those causes of action is admissible (Evid. Code, § 351).

18

believed the conduct he opposed was discriminatory. The nature of Hickman's alleged conduct was also relevant to whether City's subsequent alleged adverse employment actions were motivated by Lewis's complaints. For example, if Lewis's underlying complaint concerned only relatively innocuous workplace issues, it arguably was less likely supervisors would become annoyed or angry at Lewis for complaining and seek to retaliate against him. Finally, evidence of Hickman's alleged harassing conduct was relevant to whether City's retaliatory acts caused harm, such as emotional distress, to Lewis. If the alleged retaliatory acts were part of a larger course of harassing conduct, it was more likely the retaliatory acts caused Lewis to suffer emotional distress.

City notes that, prior to jury selection, Lewis's counsel objected to the use of voir dire questions about sexual harassment and related topics; City's counsel and the court agreed to eliminate those categories of questions. But the hearing at which Lewis objected to the voir dire questions occurred several days *after* the hearing at which the court granted judgment on the pleadings for City and granted the motions in limine to exclude testimony about Hickman's alleged harassment. Lewis's counsel just acquiesced in the court's prior rulings excluding evidence of sexual harassment (rulings counsel had vigorously opposed). We do not agree with City's suggestion that Lewis conceded evidence of sexual harassment was irrelevant.

The trial court relied on Evidence Code section 352 in excluding evidence of sexual harassment. We conclude that, in light of the probative value of evidence of sexual harassment in proving the elements of Lewis's retaliation claim, the court abused its discretion by implicitly concluding that such probative value was substantially outweighed by the probability that admission of *any* such evidence would consume undue time or create substantial danger of undue prejudice, confusion of the issues, or misleading the jury. (See Evid. Code, § 352.) City argues that, if Lewis had been permitted to introduce the full "laundry list" of alleged sexually harassing conduct and related acts that he claims were improperly excluded, the trial would have become a "side

19

show" about issues unrelated to the retaliation claim. But City does not argue that admission of *any* evidence of Hickman's alleged sexual harassment of Lewis would have caused undue prejudice. Although the court had broad discretion to limit the scope of the evidence presented, the court's blanket exclusion of all evidence of sexual harassment (to be replaced by the reading of a brief statement of the case explaining Lewis participated in investigations of his supervisors) was an abuse of discretion.[19]

## 2. Exclusion of Expert Psychological Testimony

### a. Background

Lewis disclosed Paul Berg, a psychologist, as an expert who would testify at trial about emotional distress experienced by Lewis "as a result of [City's] hostile work environment, sexual harassment, and failure to provide treatment for [Lewis's] work-related injury." City moved in limine to exclude Berg's testimony because Berg failed to produce in discovery the results of psychological tests he administered to Lewis. Lewis opposed exclusion, arguing that, although Berg was willing to produce the test results to City's expert witness psychologist, he believed he could not legally or ethically produce them to City's counsel. After hearing argument, the court announced its "tentative ruling" on City's motion: "I am going to exclude his testimony if these documents are not produced forthwith."

At a subsequent hearing, City's counsel asked the court to preclude Berg from testifying because he had not produced the test results. Lewis's counsel argued preclusion of Berg's testimony would be inappropriate because, after the court issued its oral tentative ruling, Berg had produced the results to City's expert. The court ruled Berg had not complied with the court's order, because the court had required that Berg produce

---

[19] City contends briefly that the exclusion of evidence was proper on the alternative ground that Lewis did not produce copies of the computer images in discovery. Because this argument would not provide a basis for excluding all evidence of sexual harassment, and because the trial court did not address this contention, we decline to consider it.

20

the results to City's counsel. The court therefore adopted its tentative ruling and precluded Berg from testifying.

During trial, Lewis moved for reconsideration on the ground that the transcript of the hearing on the in limine motions reflected the court had not specified to whom Berg should produce the results. The court denied the motion.

### b. Analysis

We generally review trial court rulings excluding expert testimony for abuse of discretion. (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950.) Here, assuming the trial court had discretion under the applicable discovery statutes to exclude Berg's testimony for failure to produce the testing data,[20] we conclude the court abused that discretion. The court stated it was excluding Berg's testimony because Berg had not complied with the court's order at the previous hearing to produce the test results to City's counsel (and instead had produced them to City's expert). Based on our review of the transcript of the first hearing at which this matter was discussed, we agree with Lewis that the court did not explicitly specify Berg was to produce the results to City's counsel; the court ordered only that the results be "produced forthwith."[21]

Because the court's oral ruling was ambiguous on this point, Lewis's counsel and Berg reasonably could have believed that, by producing the test results to City's expert, they would comply with the court's order and avoid preclusion of Berg's testimony. In these circumstances, we conclude that, whatever the merits of Berg's original position in

---

[20] (See Code Civ. Proc., §§ 2023.030 [court may impose sanctions authorized by statute governing discovery method at issue], 2034.300, subd. (c), 2034.270, 2034.210, subd. (c) [authorizing exclusion of expert testimony where party unreasonably fails to produce, as part of pretrial exchange of expert witness information, "discoverable reports and writings, if any, made by" a designated expert "in the course of preparing that expert's opinion"].)

[21] In its appellate brief, City does not argue the trial court expressly specified production was to be made to City's counsel.

21

not providing the data to City's counsel in discovery, it was an abuse of discretion for the court to sanction Lewis by precluding Berg from testifying.

### 3.    Prejudice

When evidence is improperly excluded, "the error is not reversible unless ' "it is reasonably probable a result more favorable to the appellant would have been reached absent the error.  [Citations.]"  [Citation.]' " (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431–1432.)  We conclude it is reasonably probable that Lewis would have obtained a more favorable result if the evidence erroneously excluded by the trial court (evidence of sexual harassment and expert testimony about Lewis's emotional distress) had been admitted.

As noted, the jury found City took adverse employment actions against Lewis because of his participation in protected activity, but the adverse actions did not cause harm to Lewis.  Expert psychological testimony about Lewis's emotional distress would have addressed the causation issue the jury resolved in City's favor.  Such testimony would have given the jury a basis to find Lewis did suffer harm as a result of City's actions.  We reject City's argument that exclusion of Berg's testimony was harmless because the jury "never reached the issue of damages . . . ."  The testimony was relevant to whether City's alleged retaliatory acts caused Lewis harm (the causation element the jury resolved in favor of City), not just to the subsequent question on the verdict form as to whether he sustained compensable damages.  And, contrary to City's suggestion, the scope of Berg's anticipated testimony as summarized in Lewis's expert disclosure (i.e., emotional distress experienced by Lewis "as a result of [City's] hostile work environment, sexual harassment, and failure to provide treatment for [Lewis's] work-related injury") fairly encompassed emotional distress from City's alleged retaliatory acts.

Moreover, if Lewis had been permitted to present evidence of Hickman's alleged sexually harassing conduct, the jury would have had a fuller understanding of the context

22

in which Lewis's protected activity and City's adverse actions occurred. The jury also could have assessed whether City's retaliatory acts, when considered as part of an alleged larger course of harassing or improper conduct toward Lewis, caused him harm, such as emotional distress. We disagree with City's assertion that such evidence was not relevant to the causation issue.

Finally, as we have recognized, the presence of multiple errors is significant in and of itself: "Without attempting to analyze separately these issues of prejudice, we conclude that the cumulative effect of the errors was unquestionably to make it 'reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error[s].' " (*Johnson v. Tosco Corp.* (1991) 1 Cal.App.4th 123, 141; see *Veronese v. Lucasfilm Ltd.* (2012) 212 Cal.App.4th 1, 32.) We will reverse the judgment for City on the retaliation claim and remand for retrial.

### 4.    Lewis's Request for a Partial Retrial

Lewis suggests in passing that we should remand the case for a limited retrial on the causation-of-harm element, and should leave intact the jury's findings in Lewis's favor on other elements of the retaliation cause of action (i.e., City took adverse actions against Lewis because of his participation in protected activity). Because Lewis does not support this request with reasoned argument or citations to authority, he has forfeited this point. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.) His argument also fails on the merits.

We have recognized that, in general, "[a] limited retrial may be ordered if the issue to be tried ' "can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial." ' [Citation.]" (*Collins v. Plant Insulation Co.* (2010) 185 Cal.App.4th 260, 276 [ordering limited retrial on apportionment of fault where there was no challenge to jury's liability verdict].) And, although a special verdict requires the jury to resolve every controverted fact issue (Code Civ. Proc., § 624; *Falls v. Superior Court* (1987) 194 Cal.App.3d 851, 854-855; Wegner et al., Cal. Practice Guide:  Civil

23

Procedure During Trial (The Rutter Group 2012) ¶ 17:5.1, p. 17-2), a court may enter a "partial special verdict" where the jury has resolved all ultimate facts necessary on a "separate and severable" cause of action. (*Valentine v. Baxter Healthcare Corp.* (1999) 68 Cal.App.4th 1467, 1477-1480; Wegner et al., Cal. Practice Guide: Civil Procedure During Trial, *supra*, ¶ 17:5.4, p. 17-3.) But a court may not enter a partial special verdict that fails to dispose of all elements necessary to establish liability on a single cause of action. (See *Falls v. Superior Court, supra,* 194 Cal.App.3d at p. 855.)

Here, the jury returned a special verdict on a single cause of action for retaliation, finding Lewis proved some elements of the cause of action, but not causation of harm; accordingly, City prevailed on this cause of action. A reversal of just the jury's adverse finding on the causation-of-harm element (the relief apparently sought by Lewis) would leave a partial special verdict consisting of the jury's responses on only some elements of the retaliation cause of action and would not establish City's liability on that claim.

Moreover, even if a partial special verdict were permissible under these circumstances, a partial retrial on the causation-of-harm element would cause confusion and uncertainty and would be prejudicial to City. A second jury would have to determine whether City's retaliatory acts caused harm to Lewis, but the second jury would not know which of City's alleged acts (e.g., termination of Lewis's employment at the end of his paid internship, false accusations of misconduct after he returned as a volunteer, interference with his workers' compensation claim) the first jury determined were retaliatory. (See *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 282, 285-286 [where second trier of fact would have no basis for determining which of several allegedly fraudulent transactions the first jury found fraudulent, partial retrial on damages would be prejudicial to defendant].) A full retrial on the retaliation claim is necessary.

## III. DISPOSITION

In No. A134114, as to Hickman: The grant of summary judgment is reversed. Summary adjudication of the first cause of action for sexual harassment is reversed.

Summary adjudication of all other causes of action is affirmed. Lewis and Hickman shall bear their own costs on appeal.

In No. A134114, as to Lantrip: The judgment is affirmed. Lantrip shall recover his costs on appeal.

In No. A134078, the judgment for City is reversed. Judgment on the pleadings on the causes of action for sexual harassment and failure to prevent sexual harassment is reversed. Judgment on the pleadings on the cause of action for intentional infliction of emotional distress is affirmed. Judgment for City on the retaliation cause of action is reversed. Lewis and City shall bear their own costs on appeal.


_____
Dondero, Acting P. J.


We concur:


_____
Banke, J.


_____
Becton, J.*

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court: Solano County Superior Court

Trial Judge: Hon. Robert S. Bowers

Counsel for Plaintiff and Appellants: Bergquist Wood McIntosh Seto LLP:
 Bruce A. McIntosh

 Kraeber Law Office:
 Rhonda D. Shelton-Kraeber

Counsel for Defendants and Respondents: Stubbs & Leone:
 Louis A. Leone
  and
 Kathleen L. Darmagnac

 Davis & Young:
 Mark E. Davis
  and
 Eric J. Bengston