Filed 9/13/23  L.D. v. R.T. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| L.D., | C095257 |
| Plaintiff and Respondent, | (Super. Ct. No. PC20210444) |
| v. | |
| R.T., | |
| Defendant and Appellant. | |

This case arises out of a dispute between neighbors, L.D. and R.T., over whether L.D. and her husband have too many animals, and whether the presence of these animals is creating a nuisance.  That underlying dispute, however, is not at issue in this appeal. At issue here is whether the trial court properly issued a civil harassment restraining order against R.T., who took photos and videos of L.D. on a daily basis, often staring at her for nearly 10 minutes at a time from her fence line, and who, by his own admission, had 1,428 videos of L.D. and her property and animals on his cell phone.

R.T. contends:  (1) the evidence is insufficient to support the trial court's implied finding that R.T.'s conduct would have caused a reasonable person to suffer substantial emotional distress; (2) the trial court erred in issuing the restraining order because R.T. proved by a preponderance of the evidence that he was lawfully defending himself and

1

his family from an environmental trespass; (3) the trial court prejudicially abused its discretion and violated R.T.'s due process rights by declining to receive and consider all of his evidence, and disallowing cross-examination of L.D.; (4) the order requiring R.T. to relinquish his firearm violates his right to bear arms; and (5) L.D. committed the tort of abuse of process by seeking the restraining order.

We affirm. As we explain, R.T.'s challenge to the sufficiency of the evidence is forfeited and, in any event, fails on the merits. The evidence is more than sufficient to support a conclusion that R.T.'s conduct would have caused a reasonable person to suffer substantial emotional distress. R.T.'s assertion that he should have prevailed because he was defending himself and his family from an environmental trespass also fails. While we agree he has a constitutional right to petition the government for a redress of grievances, and he was apparently taking the pictures and videos in connection with complaints filed with various governmental agencies and in preparation for filing a lawsuit, the trial court impliedly found his course of conduct extended beyond what was necessary to document the conditions across the street. This finding is also supported by substantial evidence. With respect to R.T.'s remaining claims, his due process rights were not violated by any evidentiary rulings made by the trial court, his Second Amendment challenge to the order requiring him to relinquish his firearm is forfeited, and whether L.D. committed an abuse of process is not the proper subject of this appeal.

BACKGROUND

L.D. petitioned the trial court for a civil harassment restraining order against R.T. on August 18, 2021. The petition was not made a part of the appellate record.

A contested hearing on the petition was held the following month. At the hearing, L.D. testified that she lives in Placerville with her husband, on a piece of property that is zoned for horses and other animals. When they moved onto the property, they also brought horses, goats, a cow, a camel, an ostrich, and other animals, including various birds. R.T. lives across the street. At first, "he was really nice" and "brought his

2

grandkids over to see the camel," but eventually he and another neighbor started taking videos of L.D.[1]

L.D. testified that R.T. took pictures and videos of her every day. As she described: "Every time I start my tractor to feed my animals, or clean, or anything his garage would go up, and he would come out and take pictures or video, and I knew this." This made L.D. "very uncomfortable" because she was often at the property by herself, her cell phone did not have reception at the property, and her internet connection was not reliable. L.D. testified: "I'm so stressed out. I don't even want to go outside. I don't want to get up in the morning. I -- I'm so stressed out. I'm seeing -- I had to go see a counselor, and I had to have some anxiety medicine." L.D. continued: "I shouldn't have to live where I don't even want to go outside because . . . he literally will stand there on the other side of my fence on the street and stare at me for like -- not joking . . . almost 10 minutes -- not saying a word." L.D. testified that R.T.'s conduct was also preventing her from sleeping because she had been stalked in the past, "so it brought all that back up."

L.D. further testified that R.T. complained about her animals with various entities, including the fire department, and had also sought a restraining order of his own, which was denied. R.T.'s petition for the restraining order apparently recited how many birds she had, which also concerned L.D. because, as she explained, "where my birds are, . . . you can't see in my house unless you're on my back porch."

R.T.'s prior petition for a restraining order was not admitted into evidence.[2] However, L.D.'s attorney informed the trial court that R.T. also submitted, in connection with that prior petition, an hourly log of L.D.'s activities. L.D.'s attorney noted that this

---

[1] The reporter's transcript is entirely capitalized. All quotations from that transcript omit the capitalization except where required by standard rules for capitalization.

[2] R.T. offered to show it to the trial court during the hearing, but the trial court responded: "That case is over."

3

log was attached to L.D.'s petition and asked the trial court to take judicial notice of the item. The trial court did not specifically rule on the request for judicial notice, but stated it did receive the log and "did read it." L.D.'s counsel then argued: "To find out that he's keeping, like, an hourly log of her. It's really kind of creepy. And video taping [*sic*] her all day long and putting notes about it. And it's not -- I've never seen such a thing before. And if somebody goes to this extent, it's worrisome." As mentioned, L.D.'s petition, to which this log was apparently attached, was not made a part of the appellate record.[3]

The trial court then heard from R.T., who confirmed that he lived across the street from L.D. and was taking videos of her. R.T. testified: "They moved in, and they brought in approximately 70 animals, I think, she said. My count was 26 horses, a camel, a brahma cow, a cow and a baby cow, four baby horses -- or Shetland ponies, three pigs, four alpacas, 32 birds." R.T. testified that the animals were all on L.D.'s property, but the big animals were located, as he put it, "right on the street -- 70 feet from my garage door." R.T. added: "The bottom line is they brought in a zoo, and they don't --."

At this point, the trial court interrupted to ask R.T. whether he had called animal control. R.T. answered: "I've gotten animal control. I've gotten air quality. I've gotten solid waste. I've gotten code enforcement, and I'm working with [an El Dorado County supervisor]." R.T. continued: "They moved in there. And as -- as they moved in there, we started getting hundreds and hundreds and hundreds of flies. The horses, and the cows, the camels, all that -- they're right in front -- 70 feet from my house. [¶] They don't clean out the pens; they just leave the -- and they say it's common practice. They

---

[3] R.T. twice moved to augment the record with "a 16-page written log description of [the] videos" he took of L.D. and her property. We denied both motions, noting "there is no indication that the materials were filed or lodged in the superior court." Whether this log is the same log referred to at the hearing is unclear.

4

just leave the manure there and the -- and the horses walk all over it and get it all powdery. The next thing you know, we have clouds and clouds like she's burning over there but it's not burning, it's urine and manure clouds just flying in the air. [¶] I have -- 1,428 videos of this situation that we're living in."

The trial court asked R.T. why he was taking these videos. R.T. answered: "Because I'm inundated with all these flies. I have the videos to show, if you'd like to see? I have -- I have videos on -- right on my phone; I can show you the flies, and I can --." The trial court interrupted: "I get the fact that her animals draw flies." A short time later, the trial court also stated: "I'm not going to look at all your stuff," adding: "I understand what you're saying. I've got it." Returning to the reason he was taking the videos, R.T. stated that he was taking the videos "to get evidence for future litigation" and "get this problem taken care of." R.T. continued: "We cannot live -- it's inhuman. We walk out the door and we're covered in flie[s] and we're covered in dust. We have to take a bath every time we walk out the door. If I walk out to water my plants, I get covered in dust from this situation. [¶] They've failed to -- to negate the dust issue. They've failed to negate the -- the fly issue. They've failed to negate the -- the smell issue."

R.T. then claimed that L.D. intentionally drove a tractor containing animal waste in front of his house so he could "get a whiff of it." L.D. denied this. R.T. further claimed that L.D. was not properly caring for the animals, saying: "She's gone for nine days; nobody takes care of these animals, and they haven't been fed, and we learn these things by -- by videotaping the -- the dust and things." L.D. denied these assertions as well.

The trial court ultimately ruled: "The Court will grant an order at this time for a period of one year under the following terms and conditions. [¶] You're not to annoy, harass, threaten, stalk, follow, molest, disturb the peace, keep under surveillance, or block

5

the movements of this individual.  You're not to have a firearm or ammunition for a period of one year."

DISCUSSION

**I**

*Sufficiency of the Evidence*

R.T. contends the evidence is insufficient to support the trial court's implied finding that his conduct would have caused a reasonable person to suffer substantial emotional distress.  This contention is forfeited and, in any event, fails on the merits.

Code of Civil Procedure[4] section 527.6, subdivision (a)(1), provides:  "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section."  Subdivision (b) of this section defines " '[h]arassment' " to include "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).)  Subdivision (b) also provides, in relevant part:  " 'Course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual . . . .  Constitutionally protected activity is not included within the meaning of 'course of conduct.' "  (§ 527.6, subd. (b)(1).)  An order after hearing prohibiting harassment shall issue "[i]f the judge finds by clear and convincing evidence that unlawful harassment exists."  (§ 527.6, subd. (i).)

---

[4]  Undesignated statutory references are to the Code of Civil Procedure.

6

We review a trial court's issuance of a civil harassment restraining order for abuse of discretion.  (See *Salazar v. Eastin* (1995) 9 Cal.4th 836, 849-850.)  With exceptions not relevant here, such an abuse will not be found where the findings necessary to support the challenged order are supported by substantial evidence.  (See *Bixby v. Pierno* (1971) 4 Cal.3d 130, 150; *Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137-1138.)  "In assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in . . . section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review.  We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

An appellant challenging the sufficiency of the evidence to support a factual finding is required to set forth all material evidence supporting the finding, not merely their own evidence; failure to do so forfeits the issue.  (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  Moreover, an appellant's opening brief is required to "[p]rovide a summary of the significant facts *limited to matters in the record*."  (Cal. Rules of Court, rule 8.204(a)(2)(C), italics added.)  R.T.'s statement of facts provides only his version of the dispute with L.D. and cites almost exclusively to his "video log," which is not part of the appellate record.  This one-sided recitation of facts based primarily on matters outside the record runs afoul of these rules of appellate procedure. R.T. "is not exempt from the foregoing rules because he is representing himself on appeal in propria persona.  Under the law, a party may choose to act as his or her own attorney. [Citations.]  '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)  R.T.'s challenge to the sufficiency of the evidence is therefore forfeited.

In any event, based on our review of the record, we conclude substantial evidence supports the trial court's implied finding that R.T.'s course of conduct would have caused a reasonable person to suffer substantial emotional distress. L.D. testified that R.T. took photos and videos of her on a daily basis, often staring at her for nearly 10 minutes at a time from her fence line. By R.T.'s own admission, he had 1,428 videos of L.D. and her property and animals on his cell phone. He also took notes regarding her activities on a log. And when he filed for a restraining order of his own, he knew the precise number of birds L.D. had inside her house, information that L.D. explained would only be known by being on her back porch. L.D. further testified that she was often at the property by herself, her cell phone did not have reception at the property, and her internet connection was not reliable, adding to her level of concern. Given these circumstances, we have no difficulty concluding that R.T.'s behavior would have caused a reasonable person to suffer substantial emotional distress.

## II

### *R.T.'s Lawful Defense Claim*

R.T. also claims the trial court erred in issuing the restraining order because he proved by a preponderance of the evidence that he was lawfully defending himself and his family from an environmental trespass. Not so.

As a preliminary matter, most of R.T.'s briefing on this issue attempts to establish that L.D.'s " 'Zoo Operation' " constituted an environmental trespass on his property. He claims he proved the elements of such a trespass before the trial court. However, the matter before the trial court was not whether L.D.'s animals unlawfully interfered with R.T.'s possessory interests in his property by drawing flies, emanating odors, and sending dust across the street. Instead, the only matter before the trial court below was whether a restraining order should issue based on R.T.'s conduct. That conduct was him coming out to photograph and record video of L.D. on a daily basis. At the hearing, he admitted engaging in this conduct and testified that he was doing so "to get evidence for future

8

litigation." That is apparently what R.T. means by "protecting my family from intrusive environmental trespass." He also asserts this conduct is "constitutionally protected." R.T. does not argue on appeal, however, that the restraining order infringes on his First Amendment right to petition the government by preventing him from taking photos and video in furtherance of making complaints to the various governmental entities and ultimately filing a lawsuit. Instead, he asserts his constitutional "right of self[-]defense" and "[h]appiness pursuant to [the] California Constitution" outweighed L.D.'s interests in restraining his conduct. This argument is forfeited for failure to provide reasoned argument or citations to relevant authorities. (See *Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1539; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

In any event, to the extent that R.T. had a potentially viable constitutional defense below, it was based on the fact that he was taking the photos and video in connection with petitioning activity. R.T. has a fundamental constitutional right to file complaints with the various administrative agencies and/or file a lawsuit seeking to enjoin what he considers to be both a nuisance and an environmental trespass. (See *Smith v. Silvey* (1983) 149 Cal.App.3d 400, 406.) However, unlike the improperly enjoined activities in *Smith v. Silvey*, i.e., contacting such agencies, the restraining order here prevents R.T. from annoying, harassing, threatening, stalking, following, molesting, disturbing the peace, keeping under surveillance, or blocking L.D.'s movements. It does not prevent him from making complaints against L.D. with any governmental agencies. Nor does it specifically prevent him from collecting evidence against her by means of taking photos or video. He simply cannot do so in an annoying, harassing, or threatening manner, or stalk her movements, or keep her under surveillance. This in no way infringes on R.T.'s constitutional right to petition the government for a redress of grievances.

Simply put, R.T.'s harassing conduct went far beyond filing complaints and collecting necessary evidence in preparation for litigation. The trial court impliedly so found. Such a finding is also supported by substantial evidence.

## III

### *Claims of Evidentiary Error*

R.T. further asserts that the trial court prejudicially abused its discretion and violated his due process rights by declining to receive and consider all of his evidence and disallowing cross-examination of L.D. He is mistaken.

First, the trial court has broad discretion in determining whether proffered evidence is relevant. (*People v. Diamond* (1970) 10 Cal.App.3d 798, 801.) The trial court heard from R.T., expressly credited his testimony that L.D.'s animals draw flies, and impliedly accepted his other assertions about the animals, saying: "I understand what you're saying. I've got it." However, as previously explained, the matter before the trial court was not whether L.D.'s animals drew flies, emanated odors, and sent dust across the street. For that reason, the trial court declined to "look at all [of R.T.'s] stuff," apparently referring to R.T.'s videos and video log and his correspondence with the various administrative agencies. The trial court also interrupted R.T. when he tried to explain his prior request for a restraining order against L.D., saying: "That case is over." This proffered evidence was simply not relevant to whether R.T.'s conduct amounted to harassment. There was no abuse of discretion.

Second, contrary to R.T.'s assertion on appeal, the trial court did not disallow cross-examination of L.D. R.T. did not ask to cross-examine L.D. at the hearing. Nor did the trial court generally rule that cross-examination would not be allowed. R.T.'s assertion is therefore forfeited. (See *JMS Air Conditioning & Appliance Service, Inc. v. Santa Monica Community College Dist.* (2018) 30 Cal.App.5th 945, 962, fn. 6.)

10

## IV

### *Second Amendment Claim*

R.T. has also forfeited his Second Amendment challenge to the order requiring him to relinquish his firearm.  Again, an appellant must support each assertion of error with reasoned argument and citations to relevant authorities; failure to do so results in forfeiture of the claim.  (*Lewis v. City of Benicia, supra*, 224 Cal.App.4th at p. 1539; *Badie v. Bank of America, supra*, 67 Cal.App.4th at pp. 784-785.)  R.T. devotes a single page of his opening brief to his Second Amendment claim and does not cite or discuss a single case relevant to this issue.  The claim is forfeited.

## V

### *Purported Abuse of Process*

Finally, R.T. devotes another single page of his opening brief to attempting to demonstrate that L.D. committed the tort of abuse of process.  Whether such a tort has been committed is not the proper subject of this appeal.

### DISPOSITION

The order is affirmed.  No costs are awarded.

/s/
Horst, J.*

We concur:


/s/
Hull, Acting P. J.


/s/
Mauro, J.

---

*  Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.